# Commonwealth *v.* Loomis, Appellant.

*Criminal law—Murder—Accomplice — Evidence — Witnesses—Charge—Undue weight to certain witness—Interest—Alibi—When case for court and when for jury.*

1. A person is not an accomplice merely because he was present at the commission of a crime and failed thereafter to report it.

2. Where a witness admits being present at the time a murder is committed, but testifies that he was only a terrified onlooker, a charge is erroneous which deals only with the weight to be given to the testimony of an accomplice.

3. Under such circumstances if he was an accomplice his testimony in this respect is untrue, and the jury should be told that, while his credibility is for them, they are at liberty to disregard it entirely if they believe he testified falsely to this material fact.

4. In a murder case the trial judge should be careful not to give or seem to give too great weight to the testimony of any witness or class of witness.

5. It is error to charge the jury in a murder case that the test in deciding as to the truthfulness of defendant's evidence, is in determining whether or not he impressed them as a shifty, evasive and slick witnesses.

6. In a murder case the jury should not be told that witnesses for the defense might be found interested because they were assisting counsel for defendant at the trial, or that they might find corruption or carelessness from that fact.

7. It is for the jury to say whether or not a defendant is guilty of the crime with which he is charged, even though it is difficult

to understand how it could have been committed as narrated by the witnesses, unless the proof of the alleged exculpatory circumstances is so clear as to require the court to rule thereon as a matter of law.

Argued May 3, 1920. Appeal, No. 296, Jan. T., 1920, by defendant, from judgment of O. & T. Northampton Co., April T., 1918, No. 76, on verdict of guilty of murder of the first degree in case of Commonwealth v. Robert M. Loomis. Before Brown, C. J., Stewart, Moschzisker, Frazer, Walling, Simpson and Kephart, JJ. Reversed.

Indictment for murder. Before Stewart, P. J.

The opinion of the Supreme Court states the facts.

Verdict of guilty of murder of the first degree, upon which judgment of sentence was passed. Defendant appealed.

*Errors assigned* were, inter alia, (3) overruling of objection to competency of Shrope, objected to on ground that he was mentally deficient, quoting ruling and exception but not evidence; (5) (6) portions of charge quoted in opinion of Supreme Court, quoting them; (11) refusal of request for binding instructions for defendant, quoting point and answer.

*Supplemental errors assigned* were, inter alia, (2, 6) admission in evidence of shirt with blood spots, admitted without objection, quoting record; (8) instruction as to Shrope's testimony, partially quoted in opinion of Supreme Court, quoting it in full; (11) judgment of court, quoting it.

*Samuel W. Cooper* and *Fred E. Geiser,* with them *A. C. LaBarre,* for appellant.—There was no competent evidence introduced from which the jury were entitled to find either murder in the first degree or in any other de-

gree: Com. v. Morrison, 193 Pa. 613; Com. v. Bubnis, 197 Pa. 542.

It was error for the trial judge to disregard the evidence of Shrope's insanity so plainly written on his face and features, and to permit him to be sworn as a witness, against our objection: Warren v. Com., 37 Pa. 45; Com. v. Byers, 45 Pa. Superior Ct. 37; Com. v. Bone, 64 Pa. Superior Ct. 48.

Undue prominence was given by the court below to the interest of the defendant in the case, and his manner as a witness.

Standing alone, the testimony of an accomplice is worthless: Carrol v. Com., 84 Pa. 107; Ettinger v. Com., 98 Pa. 344; Watson v. Com., 95 Pa. 418.

*Frank McCluskey,* with him *T. McKeen Chidsey,* District Attorney, for appellee.—An insane person is competent to be a witness if he understands the obligation of an oath and has sufficient mental power to give correct account of what he has seen or heard: District of Columbia v. Armes, 107 U. S. 519.

On the trial of an indictment for murder, it is proper for the court to charge that the interest of the prisoner may be taken into account by the jury in determining the credibility of the witness: Com. v. McKwayne, 221 Pa. 449; Com. v. Orr, 138 Pa. 284.

OPINION BY MR. JUSTICE SIMPSON, May 26, 1920:

Bertha Myers was brutally killed at her home in the City of Easton, and defendant and Charles M. Shrope were separately indicted and tried for her murder. Defendant pleaded not guilty, but in this case was convicted of murder of the first degree. Shrope pleaded non vult contendere; the court below considering this as an equivalent of "convicted by confession" within the meaning of section 74 of the Act of March 31, 1860, P. L. 382, proceeded "by examination of witnesses to determine the degree of the crime" and found him guilty

of murder of the first degree; thereupon an appeal was taken and we reversed the sentence of execution because this plea is not allowable in a capital case: Commonwealth v. Shrope, 264 Pa. 246. On his second trial insanity at that time was alleged and found; and, the evidence showing he had reached the final stage of dementia præcox of the catatonic type (that is an insanity which commences at puberty, is progressive in character and ends in general paresis), he was sent to an asylum for the criminal insane. No evidence on the subject of Shrope's insanity was presented at the trial of this defendant, but all of the above proceedings had been completed before the sentence of death was imposed from which the present appeal is taken.

On the day after the murder both defendant and Shrope were interrogated by the police as to their whereabouts the night before, and as to their connection with the crime. Each denied any knowledge in regard to it. Defendant maintained this position throughout; but Shrope later signed several confessions accusing defendant of the murder, then still later alleged those confessions were untrue, and finally at this trial he repudiated his repudiations and testified for the Commonwealth. He admitted making the conflicting statements, however, and when asked to explain them said: "I thought that I would tell a story which would help Bob, which later I thought afterwards it wouldn't help me any, which I thought, 'What is the use of helping him out and not helping me.'"

Shrope's testimony at this trial was that about twelve o'clock, midnight, he and defendant left the hotel, where he was working and defendant was staying, and went to the house of decedent; that defendant struck decedent on the nose causing it to bleed, then threw her on the floor and held her there while he tore up the bedclothes, made ropes of them, gagged her, tied her hands behind her back, then her feet, and then drew up the feet and tied the hands and feet together. She died from

strangulation because unable to breathe through the blood-clotted nose. Shrope, who was a larger man than defendant, and, from his own story, at least equally as strong, says he saw all this but did not interfere, because he was afraid defendant would treat him in the same way decedent was treated. He admitted there was nothing to hinder him from getting away while defendant was holding and binding decedent, but gave the same excuse for not doing so, though defendant could not have held her and pursued him at the same time. He says defendant, after tying decedent in the way stated, ransacked the house from top to bottom, throwing the contents of sideboard, trunks and drawers on the floor, tearing open the bed mattress, examining the interior of the clock and the refrigerator, searching under the carpets and throughout the house minutely, taking money, jewelry and silverware, after which the two returned to the hotel about 1 a. m., defendant carrying under his arm a box about eight inches by twelve inches, containing the silverware which he had found in the house. Shrope said he took no part in either the murder or robbery. There was no other testimony directly connecting defendant with the crimes; but there was later found in the house a tin box from which Shrope said defendant had taken some money and jewelry, and two witnesses testified that a finger print found on the box was identical with admitted specimens of prints of the little finger of defendant's left hand. Although practically everything in the house is alleged by the Commonwealth to have been handled by defendant, this single finger mark is the only one concerning which evidence was offered, and defendant, admittedly being without knowledge of the district attorney's intention to introduce such evidence, produced no expert testimony in reply thereto.

Three witnesses testified to defendant leaving the hotel with Shrope and returning with him about the hours specified, and another witness testified to seeing defendant with some one, whom he could not identify,

returning to the hotel from the direction of decedent's house about the time stated; but nobody testified to any box or package being carried by defendant, who, on the return to the hotel, according to Shrope, took the box to his, defendant's, bedroom. About 2 a. m., Shrope and defendant started on a "joy ride" without the box, returning about 7 a. m. following, defendant going to his room and being still in bed when the police came there and interrogated him, apparently not finding either the box, the jewelry or the silverware referred to by Shrope; nor, so far as this record shows, have they ever been found.

Defendant denied he was guilty of the crime, said he had never seen decedent or been in her house, and that he knew nothing whatever about the murder or robbery. He testified at length as to what he did during the entire period within which the crime was committed, and in this he was fully corroborated by his employer and his employer's wife, who said they were with him during all that time; and he was further corroborated as to part of the time by one other witness.

While it is difficult to understand how it was possible for defendant alone to have held decedent, torn up the bedclothes and tied her in the way stated, and while it may be true the time was too short for him to have done all that Shrope says he did in decedent's house, yet we cannot say these alleged exculpatory circumstances are so clear as to require us to rule upon them as matters of law; and hence we cannot sustain defendant's contention that he should be discharged without day.

In his opinion refusing a new trial, the trial judge says: "We desire to place upon record our judgment that the verdict of the jury in the present case was right"; and that he so felt when delivering his charge is evident therefrom. He went further, however, and told the jury that Shrope was an accomplice, and carefully and accurately cautioned them regarding the weight to be given to such testimony. Every other reflecting mind

reading this record must reach the same conclusion as to Shrope, if he was in fact present at the commission of the offense. He says, however, he was only a terrified onlooker, and if this is so neither his presence there nor his failure to report the homicide would make him an accomplice: Bird v. United States, 187 U. S. 118. If his story regarding this was untrue, he was either a perjurer, or was mentally incompetent to know whether or not he took part in the commission of the crime. Either of these conclusions necessarily results in seriously impairing the value of his testimony, left "the jury at liberty to disregard the whole" of it, and called for much more drastic criticism than if he was simply an accomplice. Having told them he was an accomplice, the trial judge should at least have added that if his "testimony was false as to [this] material fact" it "was no more than prudent to regard all that he says with strong suspicion, and place no reliance on his mere statements" (Com. v. Ieradi, 216 Pa. 87, 89), leaving the question of his credibility to the jury; yet, notwithstanding the fact that proof of the corpus delicti depended entirely upon his uncorroborated testimony, the charge is wholly silent upon this point, and the jury's attention was not even called to the fact of the admitted contradictory stories he told, and the exceedingly significant reason given by him, as above quoted, for his final attitude in the matter. On the contrary the charge seems to give to his testimony the stamp of approval, especially when it says: "The Commonwealth......calls your attention to the fact [not the alleged fact] that he [Shrope] was unusually accurate both in direct and cross-examination."

So, too, when the trial judge was speaking of the witnesses for the Commonwealth, who testified as to the hours defendant and Shrope left the hotel and returned to it, he said: "Could Mr. Laubach be mistaken?...... Could Mr. Gramm be mistaken?......Could Johnson be mistaken? That is for you to say, gentlemen. There is a possibility of their being mistaken, of their all being

mistaken. Is it probable they were mistaken?" Despite their evident leaning, no legal objection can be taken to any of these statements, and they are only quoted for the purpose of comparison with the method of dealing with defendant and his witnesses, as hereinafter pointed out, in order that the errors complained of may be properly weighed and considered. So far as this record discloses the disinterested witnesses who said defendant and Shrope together left the hotel about midnight and together returned about an hour later, and those who said this is not correct so far as defendant is concerned, were equally entitled to belief. One or the other must have been mistaken as to the day or hour, or must have been testifying falsely, but it was for the jury to find which was mistaken or was falsifying, without undue weight being given to either. The same may be said also as to defendant's own testimony, when compared with Shrope's. So far as this record shows it appears to have been given fairly; and, when viewed in the light of the great strain he was under, as well as his interest in the result, certainly does not contrast unfavorably with that given by Shrope.

The fifth assignment of error alleges the trial judge erred in charging the jury as follows: "The defendant is made a competent witness by the law, and being made a competent witness you must give that measure of credibility to his story which you think it is entitled to; and having a great interest in this case it is the duty of the jury to carefully scrutinize what he says, to determine whether he is telling the truth or not. His interest is a tremendous one in a charge of this seriousness and magnitude made against him. And when he is on the witness stand you should pay particular attention to his manner of testifying, both on direct examination and cross-examination. How does he answer the questions? How does he impress you? Does he impress you as a truthful witness, or as a shifty, evasive and slick witness? Those are the tests you ought to apply." It

is true the defendant's interest in the result of the case was a tremendous one, and the court was justified in saying so; but there is nothing in his testimony, as presented to us, which justifies the conclusion that he was "shifty" or "evasive" in answering the questions put to him, and unless the word "slick" is given some other meaning than it ordinarily signifies, it has no relation to him in giving this testimony. Moreover, it was error, in the light of the evidence, to contrast these words with "truthful" and apply that "test" in weighing the evidence. Defendant might have been "truthful" in his testimony, and "shifty, evasive and slick" as a witness, though, as stated, the printed record fails to disclose any reason for criticism in the latter respect. Had his testimony been considered in the same way as Shrope's, we would hesitate before reversing on this ground, but it is impossible not to see that, by contrast, defendant was put at a positive disadvantage, and the jury may well have understood he could be considered untruthful and adjudged guilty, if they thought him "shifty, evasive and slick" as a witness.

The sixth assignment of error complains of the following extract from the charge of the court: "Was the interest which Mr. and Mrs. Richardson had in this defendant sufficient to cause them to come here in his behalf and to go upon the witness stand and to testify either corruptly or carelessly with respect to this matter of an alibi? All those matters are for you. You saw these people. You can judge from their manner on the stand whether they are witnesses on whom you ought to put reliance." Mr. Richardson was defendant's employer, and, according to his testimony and that of his wife, defendant was with them at the very time the Commonwealth alleges the crime was committed. Defendant was poor, so poor that counsel had to be assigned to defend him. Under these circumstances his employer and the latter's wife may and indeed should have felt impelled by the dictates of common humanity to assist

their employee so far as they could rightfully do so. Would not any other unselfish employer have done exactly the same thing under like circumstances? Then why were their acts made the subject of insinuation and suspicion? They had no legal interest in the case, and the jury ought not to have been told that because of their presence at the trial advising with counsel for defendant, it could be found they had "sufficient......interest ......to go upon the witness stand and to testify either corruptly or carelessly with respect to this matter of an alibi." This was clear error, an error greatly magnified by contrast with the way in which the testimony of the Commonwealth's witnesses on this same subject was treated. If the testimony of Mr. and Mrs. Richardson was accurate defendant was not guilty; if not accurate defendant may or may not have been guilty; but to submit to the jury to find whether or not the witnesses had "sufficient......interest......to testify either corruptly or carelessly," was to advise the jurors they might decide, without direct evidence or proper inference therefrom, that defendant's principal witnesses were unworthy of belief.

Since this case must go back for another trial, attention is called to the fact that, upon the evidence produced, the shirt taken from defendant's dress suit case should not have been offered in evidence. All that appeared regarding it was that when it was taken, a week or more after the murder, it had four spots on it, one of which an expert said was caused by human blood. It was not shown that defendant wore this particular shirt at the time of the murder, or what was the age of the bloodstain, or even that it would probably have appeared where it was had defendant committed the crime in the way claimed by the Commonwealth. It was only admitted in evidence because no objection was made, and the trial judge was careful also to tell the jury in his charge that they "ought not to attach much impor-

tance to that feature of the case." We cannot say, however, it did not have some material weight with the jury, and certainly from its admission they may have improperly drawn a conclusion adverse to the defendant.

The trial judge may or may not have been correct in concluding defendant was guilty, but every man accused of crime, especially where his life is at stake, is entitled to a trial free of material, prejudicial error, which this defendant certainly did not have.

The judgment of the court below is reversed and a venire facias de novo awarded.