Commonwealth *v.* Parente, Appellant.

Argued January 9, 1958. Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, JONES and COHEN, JJ.

*Everett Kent,* for appellant.

*Robert Ungerleider,* First Assistant District Attorney, with him *Edward G. Ruyak,* District Attorney, for appellee.

OPINION PER CURIAM, March 26, 1958:

The judgment of the Superior Court is affirmed on the opinion of Judge WOODSIDE, 184 Pa. Superior Ct. 125.

————

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

There was a time when a lawyer—any lawyer—was universally referred to with veneration, approached with awe, treated with deference, and held high in the estimate of the entire community in which he resided and practised his noble profession. Now he is frequently parodied in books, burlesqued on the stage, caricatured in stories, and regarded lightly in programs of popular entertainment. I am happy to observe, however, that, despite this process of underestimation, the magnificent part played by the lawyer in the history

of civilization and progress has been so formidable that he can still command attention and respect wherever he appears—except in some courtrooms.

There are some courts where the lawyer is regarded with a suspicious eye as if he were an interloper intent on deceiving the judge, hoodwinking the jury, and possibly prepared to walk away with some of the evidence if not carefully watched. I have reviewed records of trials where the lawyer, while conscientiously doing his duty in ably and honestly representing his client, was scolded by the judge, lampooned by the judge, screamed at by the judge, and all but eaten up by the judge in moments of Olympian wrath.

In some of these instances the judge's action was excused by this Court on the basis that a judge's authority in the courtroom must be upheld. I believe that whatever a judge does which represents authority should indeed be supported by the appellate courts, but when a judge departs from a position of reflective impartiality and dominates the courtroom tyranically, his actions should come under the serious scrutiny of this Court, especially if they involve a belittling of attorneys respectfully trying before him. A lawyer in the courtroom is as much entitled to courtesy from the bench as the bench is entitled to courtesy from the lawyer.

I do not mean even remotely to suggest that the learned Trial Judge in the case at bar did not observe all the amenities which one expects from judicial position and that he did not treat the lawyers in this case with the maximum of courtesy and politeness. I do say, however, that he disparaged the attorney's function when he said to the jury: "You, as members of the jury, are the sole judges of all of the facts of the case and of the credibility of the witnesses. *Do not let counsel go into the jury room with you.* That is a figure of

speech. Of course, they won't go in physically, but *don't let their remarks which they made during the trial or in their closing speeches,* don't let the remarks that the Court is making concerning the facts of the case *go out to the jury room with you.*"[1]

When the Judge told the Jury that the attorney's remarks were not to go out to the jury room he was denying the defendant a right guaranteed by the fundamental law of the land. Nor did the Judge wash away the damage done by this instruction by adding that his own remarks should not go out with the jury. In the case of *Com. v. Wood,* 118 Pa. Superior Ct. 269, the Trial Judge included himself in the excluding process, as follows: "You must scrutinize the evidence, and the evidence is what you are to be guided by, not by anything counsel say about it, *or what I say about it.*" Nevertheless, the Superior Court reversed and ordered a new trial.[2]

In the case of *Com. v. Polichinus,* 229 Pa. 311, the Trial Judge instructed the jury to consider the evidence "not in the light of the arguments or speeches, made either by the counsel for the Commonwealth or for the defense. . ." It will be noted here that the Trial Judge excluded the speeches of Commonwealth counsel as well as those of defendant's counsel, but this Court said: ". . . when the learned judge in the present case told the jury, without any saving words, that they were not to consider the evidence in the light of the arguments of counsel, he committed clear reversible error."

I do not know what assumed target of congealed neutrality judges are aiming at when they decry closing arguments to the jury. They may as well decry

---

[1] Italics throughout mine, except where otherwise noted.

[2] The judge had also in his charge to the jury stated that the defendant's character was not in evidence; further that the defendant had the burden of refuting the Commonwealth's proof.

the introduction of documents and the submission of photographs which illustrate the locale of the controversy. Summations are as much a part of Trial by Jury as the presentation of testimony. If a litigant believes that his antagonist has misrepresented and distorted facts, has fabricated testimony and concealed evidence, how will he express his convictions in this respect except through his attorney? The attorney is the spokesman for the client. It would be strange indeed if the attorney should talk for his client, argue for him, and fight for him before and during the trial, but when the issue reached climax on the battlefield of decision, he should fold his tent of advocacy and silently steal away. Even so, such an act of poltroonery would do no more damage to the client's cause than to have the judge tell the jury that the cartridges fired by the attorney are all blanks and should be brushed away as idle chaff.

Judges who disparage summation arguments ignore that it is in the interests of justice that the jury know the extreme positions taken by the adversaries so that they, the jury, may decide which one conforms to the standards of the law and to the precepts of morality inherent in the law, as announced and explained by the judge.

In the case at bar the defendant was charged with a criminal offense and the jury brought in a verdict of guilty. After conviction he moved for a new trial, assigning as a reason therefor, inter alia, that the Trial Judge had deprived him of due process when he had instructed the jury to disregard his attorney's plea in his behalf. The motion was refused and the Trial Judge, in his opinion sustaining the refusal, denied that he had withdrawn defense counsel's argument from consideration by the jury because, he explained: "The Court expressly pointed out to the jury that the

evidence consisted of three distinct elements: the oral testimony, *the natural inferences of fact arising from the testimony,* and the physical exhibits. It occurs to us that when the trial court expressly told the jury that a part of the evidence was the natural inferences of fact, not only the oral testimony, the Court thereby expressly invited the jury to consider all of the arguments in the case, including the arguments of defendant's attorney." (Emphasis in original.) But the inferences arising from the testimony are something entirely different from the summation. The lawyer is not an *inferer.* He speaks plainly. He paints with a bold brush, not with faint dabs of suggestion and inference. And the canvas he presents to the jury is as much a part of Trial by Jury as an exhibit in the case.

But the learned Trial Judge says in his opinion that even if it were to be assumed that he may have erred in the respect indicated, the defendant would still not be entitled to a new trial because counsel made no request for clarification of the charge. The learned Trial Judge said: "He [defendant's counsel] may not sit back, take his chance on the verdict and then complain, if it is adverse." I have always felt that in this remark, which is often found in judicial opinions, there is as much sauce for the goose as for the gander. If the lawyer may not sit back and take a chance on the verdict, neither should the Trial Judge have the right to sit back and allow an incorrect charge to go into the jury box. If the judge actually committed an error, should it not have been as obvious to him, as to the lawyer? And if the judge responsible for the error allowed it to slip from his lips undetected, why should the lawyer be charged with having failed to catch it on his eardrums?

The lower court refused a new trial and the defendant appealed to the Superior Court, which also refused

a new trial. The defendant then appealed to this Court which also affirmed the conviction and accepted the opinion of the Superior Court as its own. It echoed the statement of the lower court that the lawyer may not sit back and take a chance on the verdict. It varied the figure of speech, but not the thought, when it said: "Counsel may not remain silent and take his chance of a verdict, and then, if it is adverse, complain of matters which could have been immediately rectified." But could the error here have been immediately rectified? An incorrect instruction can so throw the scales of justice out of balance that no hasty repair work can bring them back to that delicacy of appraisal needed in the weighing of ponderables and imponderables.

There are some words which once spoken can never be recalled. They become the spilled milk of indiscretion which no sopping up can ever recover. Once a trial judge tells the jury to pay no attention to the lawyers, no explanation can remove the stigma of unreliability with which, in the eyes of the jury, the law has stained counsel.

Neither the court below nor the Majority of this Court has given any consideration to the situation in which the Trial Judge's remarks placed trial counsel. For counsel to have insisted that the court tell the jury that his (counsel's) remarks were to go out with the jury would have placed him in the position of a semi-defendant himself. In effect the judge had already told the jury that counsel's speech was unworthy of deliberation. To have argued with the judge in open court about this matter would have made a bad situation worse. Counsel would have made of himself a mendicant pleading for something that had already been cast into the limbo of the irretrievable past. Once the judge tore away counsel's cloak of reliability before

the jury, a fair consideration of the case was no longer possible; and a new trial from that moment became imperative.

The Majority says that "the remarks of the trial judge did not constitute basic and fundamental error."

They most certainly did. What can be more basic and fundamental than the Constitution of our Commonwealth?[3] Section 9 of Article 1 of the Constitution specifies without any limitation that: "In all criminal prosecutions *the accused hath a right to be heard by himself and his counsel.*" To tell the jury that counsel's remarks are not to be taken to the jury room is to say that the accused does not have the right to be heard. Justice MOSCHZISKER (later Chief Justice) said in the case of *Com. v. Polichinus,* supra, that: "The constitutional right to be heard by counsel carries with it the right to have arguments of counsel considered by the jury in passing upon the evidence."

And in the light of these pronouncements of this Court, plus the clear mandate of the Constitution of Pennsylvania, I do not believe that this Court should sit back and let so monumental an error as was committed in this case go unrectified, immediately, or in due time.

---

[3] In the case of *Com. v. Barnak,* 357 Pa. 391, 426, Justice (now Chief Justice) JONES said in his Dissenting Opinion: ". . . the trial court's specified affirmative error is none the less ground for reversal although counsel did not call it to the judge's attention timely as is required in the case of a factual error in a court's charge . . ."