422 A.2d 1355

**COMMONWEALTH of Pennsylvania,**

**v.**

**Oliver LEVENSON, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 16, 1979.

Filed Sept. 12, 1980.

Reargument Denied Dec. 24, 1980.

408

James E. McLaughlin, Pittsburgh, for appellant.

Kemal A. Mericli, Assistant District Attorney, Pittsburgh, for Commonwealth, appellee.

Before SPAETH, HOFFMAN and VAN der VOORT, JJ.

SPAETH, Judge:

Appellant was convicted on eight counts of receiving stolen property and one count of criminal conspiracy. He was fined $20,000 and sentenced to a term of imprisonment of not less than two nor more than seven years. The convictions arose out of a series of burglaries committed in the East End of Pittsburgh during the summer and fall of 1976. A pattern emerged from the burglaries disclosing that the perpetrators primarily stole certain types of items—jewelry, sterling silver, oriental rugs, guns, and cameras. On November 16, 1976, Jack Ackerman, one of the burglars, was apprehended in the course of a burglary. Ackerman implicated James Wilde as a second burglar and Albert Brenner as the fence for the goods stolen during the burglaries. Brenner, in turn, implicated Charles Litman as the secondary fence for stolen silverware, David Nazarieh as the secondary fence for stolen rugs, and appellant as the secondary fence for stolen jewelry. Appellant was tried separately.

■■■ Appellant first argues that he should be discharged because the information containing the charges against him was signed "Robert E. Colville by C.G.C./Attorney for the Commonwealth." According to appellant, to be valid, the information had to be signed personally by Robert Colville, the District Attorney for Allegheny County, *see* Pa.R. Crim.P. 225(b), and since it was signed instead by "C.G.C.", it is void.[1] However, 42 Pa.C.S.A. § 8931(e), (i) (1979 Pamphlet), provides that an information may be signed by "any assistant district attorney whose authority to act for the district attorney . . . is evidenced by a written designation executed by the district attorney . . . and filed with the clerk of the courts." *See also Commonwealth v. Vickers*, 260 Pa.Super. 469, 394 A.2d 1022 (1978) (information signed by department head in district attorney's office is valid). Appellant does not dispute the representation in the Commonwealth's brief that "C.G.C." are the initials of Chris G. Copetas, First Assistant District Attorney of Allegheny County, who signed the information as the district attorney's designee. Nor has appellant argued that the district attorney failed to execute and file with the clerk of the courts a written designation authorizing Copetas to act for him. We reject appellant's argument that the information is void because Copetas failed to sign his full name on the information. In the absence of a specific requirement as to the manner of signing the information, we believe that the signature required need not be made in any particular manner so long as it is subject to identification. As we stated in *Commonwealth v. Belcher*, 258 Pa.Super. 153, 392 A.2d 730 (1978), the signature of the district attorney (or his designee) on an information is required to guarantee the information's authenticity and to ensure that a reasoned evaluation of the advisability of instituting a criminal action has been made by a responsible person. These purposes

1. Appellant further argues that because the information is void and thus an absolute nullity, his objections to the information were not waived by his failure to raise them in the lower court. We need not reach the interesting question of whether objections that an information is void may be raised for the first time on direct appeal since we find that the information in this case was valid.

were satisfied here when Copetas signed the district attorney's name to the information followed by his own initials.

■ Appellant argues next that he is entitled to a new trial because his conviction was obtained on the uncorroborated testimony of admitted perjurers, whose perjury the Commonwealth condoned.[2] We have been directed by appellant to no evidence showing that the Commonwealth condoned perjury at appellant's trial, or committed other improper acts. Appellant's primary complaint is that the Commonwealth condoned the perjury of two of its witnesses at the separate trial of Charles Litman.[3] Without expressing any view on whether the Commonwealth did or did not condone perjury during the Litman trial, it is sufficient to note that there is no showing that the improprieties that may have occurred in that trial denied appellant his right to a fair trial.

■ The fact that two Commonwealth witnesses (Jack Ackerman and Albert Brenner) admitted on the stand during appellant's trial that they had lied under oath during the Litman trial did not make them incompetent witnesses as neither had been convicted and sentenced for perjury. *See Commonwealth v. Pass*, 468 Pa. 36, 360 A.2d 167 (1976); *Commonwealth v. Orlosky*, 264 Pa.Super. 598, 401 A.2d 756 (1979); *Commonwealth v. Shadduck*, 168 Pa.Super. 376, 77 A.2d 673 (1951); *Commonwealth v. Billingsley*, 160 Pa.Su-

---

**2.** Although appellant raised this argument in his brief in support of post–verdict motions and again during oral argument on the motions, he did not raise it in the post–verdict motions themselves, and the lower court did not explicitly address the argument in its opinion in support of its denial of the motions. Thus, the argument may be waived. *Commonwealth v. Upshur*, 488 Pa. 27, 410 A.2d 810 (1980) (plurality opinion). However, because of the seriousness of appellant's accusations, and the difficulty of the waiver issue, we have examined appellant's argument on its merits.

**3.** *See Commonwealth v. Litman*, 276 Pa.Super. 114, 419 A.2d 121 (1980) (granting defendant new trial because trial court failed to instruct the jury adequately on factors relevant to issue of whether defendant had requisite mental status to be convicted of receiving stolen property).

per. 140, 50 A.2d 703, *aff'd,* 357 Pa. 378, 54 A.2d 705 (1947).[4] Brenner's testimony that appellant bought stolen jewelry from him knowing it was stolen, though largely uncorroborated, was sufficient to convict appellant. *Commonwealth v. Willis,* 276 Pa.Super. 13, 419 A.2d 70 (1980); *Commonwealth v. Thompson,* 181 Pa.Super. 572, 124 A.2d 180 (1956), *aff'd,* 388 Pa. 572, 131 A.2d 449, *cert. denied,* 354 U.S. 923, 77 S.Ct. 1384, 1 L.Ed.2d 1438 (1957); *see generally Commonwealth v. Arizini,* 277 Pa.Super. 27, 419 A.2d 643 (1980). As we stated in *Commonwealth v. Bartell,* 184 Pa.Super. 528, 537, 136 A.2d 166, 171 (1957):

> If a witness has made inconsistent or contradictory statements they may affect his credibility . . . but they do not make him an incompetent witness. In fact, even if a witness testified differently at a former trial his testimony at the subsequent trial is not to be rejected for this reason alone; such contradictory statements " 'affect his credibility, but do not authorize an instruction to the jury not to believe him.' " [Citations omitted.]

Nor has appellant demonstrated that either Ackerman or Brenner gave material false testimony in this case. Appellant complains that Brenner testified that prior to his arrest he met with Wilde and Ackerman five or six times, Record at 260a, while at the subsequent trial of Wilde, Brenner testified that he had seen Ackerman and Wilde together approximately a dozen times, Record at 666a–67a. Appellant has not explained how this minor variance on a collateral point had any effect on the jury's verdict.[5] Similarly, appellant has not explained the significance of the variance in Brenner's testimony at appellant's and Wilde's trials as to whether on the night of his arrest Ackerman told him that

**4.** There is no evidence that the Commonwealth engaged in prosecutorial misconduct in not prosecuting Brenner for perjury. *Cf. Commonwealth v. Myers,* 485 Pa. 519, 403 A.2d 85 (1979) (Commonwealth guilty of misconduct for delaying sentencing of convicted perjurer five years until perjurer testified in other criminal prosecutions).

**5.** It may also be noted that at appellant's trial, Brenner stated that he may have met with Ackerman and Wilde more than five or six times. Record at 263a.

he had committed the burglaries. (At Wilde's trial Brenner stated that Ackerman made such an admission, Record at 683a–84a; at appellant's trial, Brenner stated that he did not hear Ackerman make an admission but knew that such an admission had been made, Record at 324a–25a.) [6] The remaining instance of Brenner's alleged false testimony occurred when Brenner testified that he had been informed by the prosecuting district attorney that his plea bargain with the Commonwealth had been denied by the trial court.[7] Record at 289a–90a, 302a. At Wilde's trial, Brenner stated that the prosecuting attorney never said this. Record at 699a. We fail to see, however, how appellant was prejudiced by this misrepresentation. Although Brenner testified that his plea bargain had been denied, he also testified that at the time of appellant's trial he was awaiting sentencing on his pleas, that the district attorney had recommended a sentence of one to five years imprisonment to the sentencing judge, and that although he had "no guarantee", he hoped to

**6.** Appellant seems to believe that Brenner's testimony at the two trials was inconsistent regarding Ackerman's implication of Brenner in the burglaries on the night of Brenner's arrest. Appellant's Brief at 14a. It was not. *Compare* Record at 324a–25a with Record at 683a–85a. Although Brenner stated at the Wilde trial that his testimony at appellant's trial concerning Ackerman's accusations against him was inaccurate, this statement apparently resulted from Brenner's confusion during sharp cross–examination by Wilde's counsel.

Appellant also misreads the record in claiming that Brenner admitted at the Wilde trial that he lied at appellant's trial regarding his wife's solicitation of bail money from appellant. Appellant's Brief at 15. Brenner did not so admit, and no discrepancy appears in his testimony at the two trials concerning the solicitation. *Compare* Record at 704a–05a with Record at 352a–58a, 363a–64a.

Finally, we note the lack of merit in appellant's claim that Brenner perjured himself at appellant's trial concerning police interest in the stolen guns Brenner received. Appellant's Brief at 14a. Although Brenner stated on direct examination at appellant's trial that the police were not interested in his disposition of the guns, Record at 268a, on cross–examination he testified that the police questioned him about his disposition, and he refused to divulge the identities of the purchasers of the guns. Record at 347a–48a. This testimony was consistent with his testimony at Wilde's trial. *See* Record at 672a–79a.

**7.** Prior to appellant's trial Brenner pleaded guilty to seventeen counts of receiving stolen property and one count of conspiracy.

receive the recommended sentence. *See* Record at 251a–53a, 288a–91a; *see generally* 302a–09a, 366a–67a.[8] Given Brenner's admission that he was seeking leniency for his own crimes in return for his testimony against appellant and his "hope" that leniency would be forthcoming, the jury could hardly have been confused as to Brenner's interest in the case. *See generally Commonwealth v. Hallowell*, 477 Pa. 232, 383 A.2d 909 (1978); *Commonwealth v. Moehring*, 445 Pa. 400, 285 A.2d 487 (1971); *Commonwealth v. Floyd*, 259 Pa.Super. 552, 393 A.2d 963 (1978). In addition, the jury knew 1) that Brenner had lied under oath at the Litman trial; 2) that Brenner had attempted to extort bail money from appellant; 3) that Brenner was appellant's accomplice; and 4) that Brenner had a prior criminal record. The crucial facts affecting Brenner's credibility were therefore before the jury for it to assess.

Appellant cites *Mesarosh v. United States*, 352 U.S. 1, 77 S.Ct. 1, 1 L.Ed.2d 1 (1956), for the proposition that a new trial is required in the interests of justice because "the uncorroborated testimony of Ackerman and Brenner was so laden with perjury that the entire proceeding was fatally tainted." *Mesarosh*, simply put, is distinguishable, and as the lies and wrongdoings of the witnesses here were disclosed to the jury who tried him, appellant's argument is, in essence, that the jury's verdict was contrary to the weight of the evidence. It is almost too settled for citation that the weight of the evidence is an issue for the jury to determine. *E. g., Commonwealth v. Fultz*, 478 Pa. 207, 386 A.2d 513 (1978); *Commonwealth v. Jeter*, 275 Pa.Super. 89, 418 A.2d 625 (1980).

Appellant argues next that the lower court instructed the jury inadequately regarding the weight that should be given to the testimony of an admitted perjurer. At the conclusion of the court's charge, appellant's counsel asked that as Brenner had admitted lying at the Litman trial, the court

8. Brenner also testified that as a result of his cooperation with the Commonwealth his bail had been reduced from $100,000 to $5,000.

give the "charge that deals with perjury, about rejecting all and believe some." Record at 568a.[9] Counsel did not otherwise explain to the court the charge he wished it to give, nor has he informed this court. From his citation of *Commonwealth v. Loomis*, 267 Pa. 438, 110 A. 257 (1920), and *Commonwealth v. Alessio*, 313 Pa. 537, 169 A. 764 (1934), we assume that counsel wished the court to instruct the jury that if the jury found that Brenner had testified falsely to a material fact at appellant's trial, then the jury could, at its discretion, disregard the whole of his testimony.

It is readily seen that the desired instruction was essentially a restatement of the maxim *falsus in uno, falsus in omnibus*. See *Commonwealth v. Fell*, 453 Pa. 531, 309 A.2d 417 (1973); *Commonwealth v. Glover*, 446 Pa. 492, 286 A.2d 349 (1972); *Luckenbach v. Egan*, 418 Pa. 221, 210 A.2d 264 (1965). Such an instruction has been criticized by Dean Wigmore in the following terms:

> It may be said, once for all, that the maxim is in itself worthless;—first, in point of validity, because in one form it merely contains in loose fashion a kernel of truth which no one needs to be told, and in the others it is absolutely false as a maxim of life; and secondly, in point of utility, because it merely tells the jury what they may do in any event, not what they must do or must not do, and therefore it is a superfluous form of words. It is also a practice pernicious, first because there is frequently a misunderstanding of its proper force, and secondly, because it has become in the hands of many counsel a mere instrument for obtaining new trials upon points wholly unimportant in themselves.

**9.** Appellant also cited Ackerman's admitted perjury as justification for the charge. However, as appellant's criminal culpability did not turn on Ackerman's testimony but rather the largely uncorroborated testimony of Brenner, the lower court's refusal to give the requested charge could not have amounted to reversible error had Ackerman been the only perjurer to testify. Since appellant's claim of reversible error depends on the adequacy of the court's instructions concerning Brenner's credibility, we discuss below only those instructions.

Wigmore, Evidence § 1009 at 982 (Chadbourn rev. 1970) (footnotes omitted).

The necessity, indeed propriety, of giving the instruction was questioned in *Commonwealth v. Parente*, 184 Pa.Super. 125, 132, 133 A.2d 561, 564 (1957), *aff'd*, 392 Pa. 48, 139 A.2d 924 (1958), where the court stated:

The maxim has been limited, qualified, criticized, and, in a sense, rejected by both authors and courts, so that what remains might be stated thus: When a fact finding body concludes that a witness has deliberately falsified in his testimony on a material point this should be taken into consideration, along with many other tests, in determining what credence should be given to the balance of his testimony.

*See also Commonwealth v. Padgett*, 428 Pa. 229, 237 A.2d 209 (1968); Subcommittee Note, Proposed Pa. Stand. Jury Instructions–Criminal § 4.15 (Subcommittee Draft, Dec. 18, 1972) (continuing validity of charge in doubt).

Assuming for the present purpose that the *falsus in uno, falsus in omnibus* instruction remains, in some cases, proper, it nevertheless would not have addressed the issue that prompted appellant's counsel to request it–that is, the credibility to be accorded to Brenner because of his admission that he lied in the Litman trial. Had the instruction been given it would have addressed only the credibility that the jury could give to Brenner's testimony if they found he testified falsely to a material fact at *appellant's* trial.

■ We have some doubt that we may construe appellant's request at trial as one for an instruction that the testimony of an admitted perjurer is to be scrutinized by the jury with care. *See, e. g., United States v. Partin*, 493 F.2d 750, 760 (5th Cir. 1974) ("[i]t has been held that where an admitted perjurer testifie[s] in a criminal prosecution, the court *must* charge that the testimony of that witness is to be scrutinized with care"). Assuming that we may, we still find that appellant is not entitled to a new trial. The lower court summarized Brenner's testimony, including his plea

bargain with the Commonwealth, his attempt to extort bail money from appellant and Litman, and his lies at the Litman trial. Then, after giving a general charge on the credibility of the witnesses, the court, in accordance with *Commonwealth v. Didio*, 212 Pa.Super. 51, 239 A.2d 883 (1968), instructed the jury that Brenner's prior convictions of burglary and receiving stolen property could be considered "in deciding whether or not to believe all or part of [his] testimony." Record at 564a. In addition, the court gave a full and correct accomplice charge, which warned, among other things, that since Brenner was appellant's accomplice, his testimony came from a corrupt and polluted source that should be viewed by the jury closely and with disfavor and accepted only with caution. Record at 564a–566a. *See, e. g., Commonwealth v. Upshur, supra ; Commonwealth v. Russell*, 477 Pa. 147, 383 A.2d 866 (1978); *Commonwealth v. Sisak*, 436 Pa. 262, 259 A.2d 428 (1969). Furthermore, the court reviewed appellant's character evidence, and instructed that "[t]he law recognizes that a person of good character is not likely to commit a crime which is contrary to his nature," and that "[e]vidence of good character may, by itself, raise a reasonable doubt of guilt and justify a verdict or [*sic*] not guilty." Record at 567a. While the court might have properly charged that Brenner's testimony should be scrutinized with care for the additional reason that he was an admitted perjurer, given the above instructions, the court did not commit reversible error by not so charging.

■ We agree, however, with appellant's final contention, that he was improperly sentenced.[10] As noted, appellant

---

**10.** After he was sentenced, appellant filed in the lower court a "Petition for Reduction of Sentence." It appears that the lower court never acted on the petition. By filing the petition, appellant has preserved for appellate review his objections to his sentence. *Commonwealth v. Walls*, 481 Pa. 1, 391 A.2d 1064 (1978). Furthermore, we shall treat the lower court's failure to act on appellant's petition as an implicit denial of the petition. *See* 12 P.S. § 1032 (1953), *repealed by* the Judiciary Act Repealer Act, 42 Pa.C.S.A. § 20002(a) [1329] (1979 Pamphlet) (eff. June 27, 1978) (present provision at 42 Pa.C.S.A. § 5505); Pa.R.A.P. 1701.

was fined $20,000 and sentenced to a term of imprisonment of not less than two nor more than seven years. At the sentencing hearing, the only reasons given by the lower court in support of the sentence were as follows:

> THE COURT: Mr. Levenson, the jury having found you guilty of eight counts of receiving stolen property and one count of criminal conspiracy, by law this Court could impose sentences of fifty–nine years imprisonment and fines totaling $125,000.00. The Assistant District Attorney has stated that the total value of the jewelry taken in these cases amounted to approximately $230,000.00. This Court takes cognizance of the fact that some of the items taken are irreplaceable, they were family heirlooms, and because of the sentimental attachment to some of these items, no monetary value could really be computed.
>
> In imposing sentence, the Court is also taking in consideration your age, your reputation in the business community, your family, the fact that you have had no personal previous involvement with the law.
>
> The Court can find no reason for a man of your station in life of becoming involved in matters this serious and this great.

Record at 595a–96a.

No additional reasons in support of the sentence appear anywhere in the record, and although the court ordered a pre–sentence report, that report also does not appear in the record.

We have recently reviewed the responsibilities of a judge when imposing sentence. *See Commonwealth v. Doyle*, 275 Pa.Super. 373, 418 A.2d 1336 (1979); *Commonwealth v. Wicks*, 265 Pa.Super. 305, 401 A.2d 1223 (1979). The judge must have sufficient information to enable him to make a determination of the nature and circumstances of the offense and the history, character, and condition of the defendant. The judge must then evaluate this information, and formulate and explain the sentence he imposes in light

of the guidelines specified in the Sentencing Code, 18 Pa.C. S.A. §§ 1301 *et seq.* (1979–80 Supp.). Section 1321(b) of the Code provides that the sentence imposed upon a defendant must be the minimum sentence that is consistent with the protection of the public, the gravity of the offense, and the rehabilitative needs of the defendant. Section 1325 states that a court shall impose a sentence of total confinement only if

(1) there is undue risk that during a period of probation or partial confinement the defendant will commit another crime;

(2) the defendant is in need of correctional treatment that can be provided most effectively by his commitment to an institution; or

(3) a lesser sentence will depreciate the seriousness of the crime of the defendant.

The record does not disclose that the lower court considered any of these principles before imposing sentence. The lower court merely stated in a conclusory manner that in imposing sentence, it was considering appellant's history and station in life, and the absence of any mitigating reason for appellant to be involved in the burglary ring. We, therefore, must vacate appellant's judgment of sentence and remand so that appellant may be resentenced in compliance with the principles delineated in *Doyle* and *Wicks.*

Judgment of sentence vacated and case remanded for resentencing.

VAN der VOORT, J., filed a concurring and dissenting opinion.

VAN der VOORT, Judge, concurring and dissenting:

I concur in all that part of the Opinion of the Majority except the remand for resentencing. I dissent to the remand of the case for resentencing and would affirm the sentence imposed by the court below.