J-A01041-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MALIK STEVENS | : | |
| | : | |
| Appellant | : | No. 303 EDA 2022 |

Appeal from the Judgment of Sentence Entered November 15, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0007289-2018

BEFORE: LAZARUS, J., NICHOLS, J., and McCAFFERY, J.

MEMORANDUM BY LAZARUS, J.: **FILED APRIL 11, 2023**

Malik Stevens appeals from the judgment of sentence, entered in the Court of Common Pleas of Philadelphia County, after a jury convicted him of second-degree murder,[1] robbery,[2] firearms not to be carried without a license,[3] carrying a firearm in public in Philadelphia,[4] and possession of an instrument of a crime (PIC).[5] After review, we affirm.

_____

[1] 18 Pa.C.S.A. § 2502(b).

[2] *Id.* at § 3701.

[3] *Id.* at § 6106.

[4] *Id.* at § 6108.

[5] *Id.* at § 907.

Kiara Thompson, the fiancée of the victim in his matter, Vincent Ho (decedent),[6] testified that on February 27, 2018, she and the decedent were driving to Breezes Café, when the decedent asked her to pull over near the intersection of 52nd and Heston Street. *See* N.T. Jury Trial, 11/9/21, at 44. Thereafter, two men[7] wearing black clothing approached the vehicle and tried to open the passenger side doors. *Id.* at 44, 49 (Thompson testifying "one [of the men] was tugging on the [] front passenger[-side] doorknob and [the other man was tugging] on the back passenger[-side] doorknob."). One of the men pointed his weapon into the car and the decedent said, "[N]o, not her, not with her." *Id.* at 44, 48.

The decedent then, with his weapon on him, exited the vehicle. *Id.* at 48-49. Thompson "immediately" heard "a few" gunshots. *Id.* at 50-51 (Thompson testifying it was possible decedent fired his weapon); *id.* at 72 (Thompson testifying this happened within an "instant"). The decedent tried to run, and Thompson followed him in their vehicle. *Id.* at 46, 51. Once Thompson caught up with the decedent, the decedent tried to open the passenger side car door and then collapsed. *Id.* at 51. The decedent was

_____

[6] Thompson and the decedent had been in a relationship for two years and have a child together. N.T. Jury Trial, 11/9/21, at 42.

[7] At the police station, Thompson described one of the men as African American, about 5 feet 7 inches tall, with braided dark brown hair and a mustache. She described the other man as 5 feet 5 inches tall. *Id.* at 61.

"foaming out of the mouth" and non-responsive. *Id.* at 54-55. Thompson called 911. *Id.* at 55.

Allison Murtagh, Stevens' ex-girlfriend, testified that during the time of the incident, Stevens had been renting a room at 53rd and Jefferson Street and that she had been staying with him. *Id.* at 97. On February 27, 2018, at around 9:40 p.m., Stevens was in the hallway on the phone discussing his plan to meet "with a female" and "do a robbery." *Id.* at 100. Thereafter, Stevens returned to the bedroom, put on his coat, took his dark grey revolver from the futon, and said he was "going to meet with a girl outside." *Id.* at 100-02, 113 (Murtagh testifying Stevens had been carrying revolver with him regularly for last few months). Stevens returned approximately ten minutes later and was "feeling his body," asking Murtagh if he was bleeding or if he had been shot. *Id.* at 102-04 (Murtagh testifying Stevens told her someone had been shot).

Murtagh testified that the next day, Stevens told his friend "Keese" that "[Stevens] tried to rob somebody and ended up shooting him." *Id.* at 107. Stevens also told Keese that "[Stevens] and the female were involved in [what happened on Heston Street] and [] they went to rob [someone and] it all went left [because] the guy that they shot [had] a gun[. T]hat is when [Stevens] pulled his gun out and started shooting at him." *Id.* at 108. Later that day, Murtagh saw an "RIP" Instagram post from the night before regarding the decedent. Murtagh showed Stevens this post a few times. Stevens admitted

to Murtagh that he had shot the man in the Instagram post on Heston Street the previous night. *Id.* at 112.

Murtagh also testified that, two days prior to the shooting of the decedent, on February 25, 2018, she and Stevens were driving near 54th and Euclid Streets. *Id.* at 114. Stevens asked her to pull over and he exited the car holding his revolver. *Id.* at 115. Approximately ten minutes later, Murtaugh heard four or five shots fired. Stevens returned two minutes later and Murtagh drove him back to 53rd and Jefferson Streets. *Id.* at 116.[8] Stevens later confirmed he had fired these shots. *Id.* at 117.

Officer Lawrence Flagler of the Philadelphia Police Department Firearms Identification Unit compared bullets recovered from the body of the decedent with bullets recovered from the area of 54th and Euclid Streets on February 25, 2017. *Id.*, 11/10/21, at 74. Officer Flagler testified that, to a reasonable degree of scientific certainty, the bullets had been fired from the same gun. *Id.* at 94, 115. Officer Flagler also testified that the .38/.357 caliber ammunition recovered is more consistent with a revolver than a semi-automatic weapon. *Id.* at 115.

On July 7, 2018, Stevens was arrested and charged with murder and related offenses. On November 15, 2021, he was convicted by a jury of the prior-mentioned offenses and sentenced, on the same day, to life

---

[8] Murtaugh testified that she had been given immunity regarding the February 25, 2018 incident in exchange for testifying at Stevens' jury trial. N.T. Jury Trial, 11/9/21, at 120.

imprisonment without the possibility of parole.[9]  On November 19, 2021, Stevens fled a post-sentence motion, which the trial court denied.  On January 21, 2022, Stevens filed a timely notice of appeal.  Both Stevens and the trial court have complied with Pa.R.A.P. 1925.  Stevens raises the following issues for our review:

1. Whether the trial court [erred] by not including a "[s]pecial [s]crutiny" jury instruction for witness []Murtagh[] who admitted at trial that she had previously lied under oath in court?

2. Whether the trial court [erred] by admitting evidence that [Stevens] had shot the alleged murder weapon on an occasion separate from the crimes charged?

3. Whether the evidence was insufficient to convict [Stevens] of second-degree murder because the Commonwealth failed to prove beyond a reasonable doubt that [Stevens] was identified as the assailant?

4. Whether the evidence was insufficient to convict [Stevens] of robbery because the Commonwealth failed to prove beyond a reasonable doubt that the motive for the shooting was a robbery?

5. Whether the evidence was insufficient to convict [Stevens] of [PIC] and [of] carrying a firearm in public in Philadelphia [] because the Commonwealth failed to prove that [Stevens] had used a firearm in the commission of a crime or had carried a firearm in public in Philadelphia?

Appellant's Brief, at VIII.

_____

[9] Stevens' robbery conviction merged with the second-degree murder conviction for purposes of sentencing.  No further penalty was imposed regarding the Uniform Firearms Act convictions.  N.T. Sentencing, 11/15/21, at 9-10.

Stevens first contends that the trial court erred in denying his request for a "special scrutiny" jury instruction.[10]  Appellant's Brief, at 8.  By way of background, Murtagh admitted that she had previously pled guilty to a gun possession charge despite the fact that the gun had belonged to Stevens. Stevens argues that because Murtagh was the Commonwealth's "star witness," her credibility was directly at issue and the special scrutiny charge may have been sufficient to create reasonable doubt of his guilt in the jury's mind.  *Id.* at 11.  Additionally, Stevens cites to **Commonwealth v. Rouse**, 237 A.3d 483 (Pa. Super. 2020) (Table), for the proposition that the trial court's decision to forego the special scrutiny instruction because Murtagh did not admit to perjury at a "related trial" is erroneous.  *Id.* at 10.  Stevens is afforded no relief.

Our standard of review in regard to a trial court's decision on jury instructions is well-settled:

> Our standard of review when considering the denial of jury instructions is one of deference—an appellate court will reverse a court's decision only when it abused its discretion or committed an error of law.  Our key inquiry is whether the instruction on a particular issue adequately, accurately and clearly presents the law to the jury, and is sufficient to guide the jury in its deliberations.

---

[10] "You should examine closely and carefully and receive with caution the testimony of [name of witness] [any witness] if you find that he or she [] [committed perjury at another trial]."  **See** Pennsylvania Suggested Standard Criminal Jury Instructions § 4.06.

*Commonwealth v. Cannavo*, 199 A.3d 1282, 1286 (Pa. Super. 2018) (citations and quotations omitted). Additionally, "a refusal to give a requested jury charge does not require reversal unless the [defendant] was prejudiced by that refusal." *Commonwealth v. Baker*, 963 A.2d 495, 507 (Pa. Super. 2005).

Pursuant to the subcommittee note to Pa. SSJI (Crim) 4.06, "a 'careful scrutiny' charge is proper when a witness testifies who admits, although he or she has not been convicted for, perjuring himself or herself at a **related trial**." However, it goes on to state that "the [Superior Court] **did not make it clear whether the special caution was mandatory or simply permissible**." *Id.*, citing *Commonwealth v. Levenson*, 422 A.2d 1355 (Pa. Super. 1980) (emphasis added).

In *Levenson*, this Court rejected a defendant's request for a new trial due to the trial court's failure to give the jury a special scrutiny charge. The witness in *Levenson*, a co-conspirator, had admitted to lying at a previous trial of an individual who was involved in the same string of burglaries as the defendant. *Id.* at 1358. This Court determined that there was no reversible error because the court reviewed, and directed the jury to consider, the witness's criminal history and character in its credibility determination and provided a full and correct accomplice charge. *Id.* at 1261.

In **Rouse**, this Court also rejected a defendant's request for a new trial for failure to give the jury a special scrutiny charge.[11]  The witness in **Rouse**, admitted that he committed perjury at another trial by pleading guilty to two crimes he did not commit.  **Id.** at 4.    This Court determined that there was no reversible error where the trial court granted the defendant's other jury instruction requests, including an inconsistent statement instruction, a conflicting testimony instruction, and a "false in one, false in all" instruction. **Id.** at 5.

Similar to **Levenson** and **Rouse**, here, the trial court provided the jury with sufficient instructions to guide it in assessing witness credibility, including whether the witness statements are inconsistent or unreasonable, whether the witness is interested or disinterested, and whether the witness has animosity toward the defendant.  The trial court provided the jury with a false in one, false in all instruction, and prompted the jurors to consider witness credibility "in light of **all** the evidence" it heard.  N.T. Jury Trial, 11/12/21, 115-22 (emphasis added).  Indeed, here, the jury heard testimony regarding Murtagh's various drug and alcohol related convictions in Philadelphia and Delaware Counties.  N.T. Jury Trial, 11/9/21, at 152-192.  The jury also heard

---

[11] Although we agree with Stevens that the **Rouse** Court did not consider whether the perjury occurred at a "related trial," his argument is, nonetheless, meritless where the Court **still** found no error in the trial court's refusal to give the cautionary charge.  We also note that the **Rouse** Court found this issue waived for failure to object to the instructions as given but reviewed the merits of the claim.  **Id.** at 5-6.

Murtagh testify that she had previously pled guilty to a gun possession charge despite the gun belonging to Stevens.  N.T. Jury Trial, 11/10/21, at 45.

In light of foregoing, Stevens was not prejudiced by the trial court's refusal to include a special scrutiny jury charge and the jury instructions, taken as a whole, were sufficient to guide the jury in its deliberations.  **Baker**, **supra**; **Cannavo**, **supra**.

Next, Steven claims that the trial court erred by admitting evidence that Stevens fired the alleged murder weapon on an occasion separate from the crimes charged.  Specifically, he argues that this is propensity evidence, and even if used for a proper purpose (i.e. to show identity), its probative value outweighed its unfair prejudice.  Appellant's Brief, at 13-14.  Stevens is entitled to no relief.

Pennsylvania Rule of Evidence 404(b)(1) prohibits the use evidence of "any other crime, wrong, or act [] to prove a person's character in order to show that on particular occasion the person acted in accordance with the character."  Pa.R.E. 404(b)(1).  However, Rule 404(b)(2) allows evidence of a crime, wrong or act to be admissible for the purpose of "proving motive, opportunity, intent, preparation, plan, knowledge, **identity** or absence of mistake or accident.  In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice."  Pa.R.E.P. 404(b)(2) (emphasis added).  **See Commonwealth v. Cousar**, 928 A.2d 1025, 1037-38 (Pa. Super. 2007) (significant additional probative value as to identity of victim's killer where witness testimony placed same gun in

defendant's hand during previous shooting). "[I]n order to use Rule 404(b)(2) evidence to establish identity, the crimes must be so similar that logically the same person has committed both acts." *See Commonwealth v. Green*, 271 A.3d 393, 403-404 (Pa. Super. 2021) (previous shooting **not** similar for identity purposes where incidents occurred in similar area and had similar motive but occurred 14 months apart and ballistics tests revealed different firearms had been used).

Here, unlike in *Green*, ballistic evidence shows that the bullets found in the instant shooting **match** the bullets recovered from the area of 54th and Euclid Streets following an incident in which this weapon was fired only two days prior to the instant shootings. N.T. Jury Trial, 11/10/21, at 94, 115. Additionally, like in *Cousar*, Murtagh's testimony places the same revolver in Stevens' possession prior to and immediately after the shooting on 54th and Euclid Streets as well as on Stevens' bedroom futon the night of the instant shooting. N.T. Jury Trial, 11/9/21, at 100, 115. Although the weapon itself was not recovered, Detective Flagler's testimony indicates that the caliber of the bullets recovered is **more consistent** with that of a revolver. *Id.* at 108, 115, 118. Detective Flagler's testimony is consistent with Murtagh's testimony that Stevens had been carrying around a revolver regularly for the last few months. *Id.* at 113.

Further, the court provided the jury with a limiting instruction regarding use of this evidence for identity purposes only.[12] *Id.*, 11/12/21, at 137-38; Pa.R.E. 404(b)(2) (cmt) (cautionary jury instruction may ameliorate prejudicial effect of proffered evidence); *see Commonwealth v. Travaglia*, 28 A.3d 868, 882 (Pa. 2011) (presumption jury adheres to limiting instructions).

Because this other act evidence adds significant probative value as to identity of the shooter and the jury was given a limiting instruction, the trial court did not err in allowing its admission. *Cousar*, *supra*.

_____

[12] The limiting instruction provided,

> You have heard evidence tending to prove that [Stevens] was involved in another incident where a gun was shot. That incident is one for which he is not on trial, the incident that was two days prior. I am speaking of the testimony from [] Murtagh wherein she testified that she saw [Stevens] with the same gun two days prior and that she heard the weapon fired.
>
> This evidence is not before you to prove the truth of the matter asserted, that is, it is not before you for the purpose of proving that [Stevens] did or did not shoot off that gun two days earlier and that, rather, the evidence is before you for a very limited purpose. You are not here to judge what crime that was or what happened. It is here to prove identity of the perpetrator in this case.
>
> This evidence, in other words, the ballistics matched from case to case, if you find that, this evidence must not be considered by you in any way other than for the purpose I just stated. You must not regard this evidence as showing that [Stevens] is a person of bad character or criminal tendencies from which you might infer guilt.

N.T. Jury Trial, 11/12/21, at 137-38.

Stevens' issues three, four, and five claim that the evidence is insufficient to support his convictions. This Court's review of sufficiency claims is well-settled:

> [W]e evaluate the record in the light most favorable to the Commonwealth as verdict winner, giving it the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Any doubt about the defendant's guilt is to be resolved by the fact-finder unless the evidence is so weak and inconclusive that, as matter of law, no probability of fact can be drawn from the combined circumstances. Additionally, the Commonwealth may sustain its burden solely by means of circumstantial evidence.

*Commonwealth v. Lake*, 281 A.3d 341, 435-45 (Pa. Super. 2022) (citations and quotations omitted).

In Stevens' third issue, he claims that evidence was insufficient to identify him as the assailant in the shooting. Appellant's Brief, at 15. Specifically, Stevens argues that Murtagh's testimony is not credible and evidence that bullets from the decedent matched another shooting that Stevens may have been involved in does not conclusively tie him to this incident. *Id.* at 17. Stevens is entitled to no relief.

"Evidence of identity need not be positive and certain to sustain a conviction." *Commonwealth v. Orr*, 21 A.3d 1189 (Pa. Super. 2011). Additionally, as our Supreme Court has stated, "any indefiniteness and uncertainty in the identification testimony goes to its weight. Direct evidence of identity is, of course, not necessary and a defendant may be convicted

solely on circumstantial evidence." ***Commonwealth v. Hickman***, 309 A.2d 564, 566 (Pa. 1973).

Instantly, Murtagh testified that on the night of the murder, Stevens took a phone call in the hallway during which he discussed committing a robbery. Stevens subsequently left the apartment with his revolver. N.T. Jury Trial, 11/9/21, at 100-04. Stevens returned approximately 10 minutes later, feeling his body, and asking Murtagh if he had been shot. ***Id.*** The next day, Stevens admitted to Murtagh that he killed the victim after Murtagh showed him news of the victim's death circulating on Instagram. ***Id.*** at 112.

Viewing this evidence in the light most favorable to the Commonwealth and granting it all reasonable inferences, the jury could reasonably infer that Stevens was the assailant. ***Lake***, ***supra***; ***Hickman***, ***supra***.

In Stevens' fourth claim, he alleges that evidence is insufficient to prove that the motive for this shooting was a robbery. Appellant's Brief, at 17. Specifically, Stevens argues that this incident was not likely robbery because the assailant did not also shoot Thompson and nothing was stolen. ***Id.*** at 18. Stevens' claim is belied by the record.

The Crimes Code defines second-degree murder as "criminal homicide [] committed while [the] defendant was engaged as a principal or an accomplice in the perpetration of a felony." 18 Pa.C.S.A. § 2502(b). An individual is involved in the "perpetration of a felony" when, in relevant part, he engages, or is an accomplice, in the commission of, or an attempt to

commit, or flight after committing, a robbery. *Id.* at § 2505(b); *see also id.* at § 3701 (Robbery).

Testimony expressly connects the shooting to a robbery. Indeed, Murtagh testified that she heard Stevens on the phone discussing a robbery. Moreover, Stevens told his friend Keese that "[Stevens] tried to rob somebody and ended up shooting him." N.T. Jury Trial, 11/9/21, at 107. Stevens also told Keese that "[Stevens] and the female were involved in [what happened on Heston Street] and [] they went to rob [someone and] it all went left [because] the guy that they shot [had] a gun[. T]hat is when [Stevens] pulled his gun out and started shooting at him." *Id.* at 108.

Viewing this evidence in the light most favorable to the Commonwealth and granting it all reasonable inferences, the jury could reasonably infer that the robbery was a motive for the shooting. *Lake*, *supra*.

Stevens' fifth issue contends that evidence is insufficient to convict him of carrying a firearm in public in Philadelphia and PIC. Appellant's Brief, at 19. Specifically, he argues that these charges are speculative because the murder weapon was not recovered and there is no evidence that he left his apartment building with a firearm. *Id.* at 20. Stevens' arguments are meritless.

To successfully convict a defendant of possessing a firearm on the public streets of Philadelphia, the Commonwealth must prove that a defendant carried a firearm on his person on the public streets or public property of Philadelphia. *See* 18 Pa.C.S.A. § 6106(a); *id.* at § 6108. Further, to prove a

defendant possessed an instrument of a crime, the Commonwealth must establish that a defendant possessed an instrument and had the intent to employ it criminally. *Id.* at § 907(a).

Here, Murtagh's testimony that, following the phone call, Stevens walked back into his apartment, took his revolver off the futon, and said he was going to "meet with a girl **outside**," *id.* at 100-02 (emphasis added), places a firearm in Stevens' hands on the public streets of Philadelphia. Additionally, Thompson's testimony that she saw the assailant point a gun into her car and heard gun shots during the incident, *id.* at 44, both placed Stevens outside of his apartment building with a firearm and demonstrates his intent to use the firearm as a weapon.

Viewing this evidence in the light most favorable to the Commonwealth and granting it all reasonable inferences, the jury could reasonably infer that Stevens carried a firearm on the public streets of Philadelphia and possessed an instrument of a crime. *Lake*, *supra*.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/11/2023

- 15 -