470 A.2d 1376

**COMMONWEALTH of Pennsylvania**

v.

**Allen Wayne WILLIAMS, Appellant.**

Superior Court of Pennsylvania.

Argued July 12, 1983.

Filed Jan. 6, 1984.

Petition for Allowance of Appeal Denied May 2, 1984.

514

David G. Petonic, Greensburg, for appellant.

Judith Karns Ciszek, Assistant District Attorney, Greensburg, for Commonwealth, appellee.

Before CERCONE, President Judge, and HESTER, CAVANAUGH, WICKERSHAM, ROWLEY, WIEAND and POPOVICH, JJ.

CERCONE, President Judge:

This is a direct appeal from the judgment of sentence imposed by the Court of Common Pleas of Westmoreland County on December 29, 1980 following appellant's conviction in a jury trial of Criminal Attempt to Falsely Imprison.[1]

The evidence adduced by the Commonwealth at trial established that on October 23, 1979 at approximately 7:45 a.m., Vonda Ortuglio drove her automobile into the parking lot of her place of employment, the Shop N Save supermarket located on Lowry Street in Jeannette. She locked her car and began walking toward the entrance of the store when she was accosted by a black male who, upon alighting from a passing vehicle, seized her shoulder and attempted to pull her into his automobile. Mrs. Ortuglio struggled with her assailant for a few minutes and then, having finally freed herself from his grasp, ran into the supermarket to safety. She then placed a telephone call to the State Police and reported the incident.

Investigating troopers arrived on the scene a short while later to interview the victim. Mrs. Ortuglio was asked to review eight photographs carried at the time by one of the troopers.[2] She was unable to identify any of the men contained in those pictures as her attacker. Later the same day, however, Mrs. Ortuglio was shown a second array

1. 18 Pa.C.S.A. § 901.

2. Appellant's photograph was not among those comprising this array.

consisting of thirteen photographs. In this array appeared a photograph of appellant in which he wore a sign around his neck that bore the inscription "Police Dept. Jeannette, Pa.." Appellant's photograph was selected by Mrs. Ortuglio as depicting the man who set upon her in the Shop N Save parking lot that morning. Appellant was subsequently arrested and charged by complaint with criminal attempt.

On November 20, 1979, the District Attorney of Westmoreland County filed an information against appellant with the clerk of courts. The District Attorney's signature was not manually subscribed on the information. Instead, the information was "signed" with a rubber stamp facsimile signature which was then initialed by the First Assistant District Attorney of Westmoreland County, Henry A. Martin. Appellant filed an omnibus pretrial motion requesting (1) that the information be quashed (a) for jurisdictional deficiencies deriving from the failure of the District Attorney to sign the information in the manner required by Pa.R.Crim.P. 225(b) and 42 Pa.C.S.A. § 8931; and (b) because it fails to allege an essential element of the crime charged, *viz.*, that the actions of the perpetrator were unlawful and/or committed against the will of the victim; and (2) that any identification of appellant by the victim, based upon a photograph of appellant taken by the Jeannette police in connection with their investigation of a crime for which appellant was eventually discharged, together with the photograph itself, be suppressed by reason of the photograph's suggestiveness. The lower court denied these motions but nevertheless ordered the Commonwealth to conceal the police department caption on appellant's photograph when it displayed the array to the jury during trial.

Appellant proceeded to a trial by jury on April 11, 1980 and on April 15, 1980 he was convicted of Criminal Attempt to Falsely Imprison. Post-verdict motions were filed, argued and denied by opinion and order dated December 3, 1980. On December 29, 1980, appellant appeared for sen-

tencing and was ordered to undergo confinement in a state correctional facility for a period of not less than eleven and one half months nor more than twenty-three months. This direct appeal, which presents several issues [3] for our disposition, then followed.

The question of whether a criminal information, which bears a rubber stamp facsimile signature of a district attorney together with the manually-inscribed initials of an assistant district attorney, has been properly "signed" within the meaning of Pa.R.Crim.P. 225(b) [4] and the Judicial Code [5] was definitely resolved by our Supreme Court in *Commonwealth v. Contakos*, 492 Pa. 465, 424 A.2d 1284 (1981). Therein, the Court ruled that

> ... the approval and initialing of the information by an assistant district attorney, along with the stamped signature of the district attorney, complies with our Rules

3. Appellant phrases his arguments thusly:
 (1). The court lacked jurisdiction over the defendant because the District Attorney did not sign the information and the person using the facsimile stamp was not authorized in writing to so act as required by 42 Pa.C.S.A. 8931 and hence there was no showing of a review of the magistrate's transcript before initiating the criminal proceedings.
 (2). The court erred in its instruction to the jury on the maxim "false in one, false in all things".
 (3). The suppression court erred in failing to suppress a picture of defendant shown to the victim before his arrest and any identification based upon it as being so unduly suggestive, as to give rise to an irreparable likelihood of misidentification and the trial court erred in permitting its introduction into evidence, thus depriving defendant of due process of law.
 (4). The Commonwealth has failed to plead and prove an essential element of the attempt to false imprisonment, i.e. that it was done "unlawfully"?
 (5). The trial court erred in permitting the Commonwealth to introduce into evidence incidents which occurred before the offense charged.

4. Pa.R.Crim.P. 225(b) states in pertinent part that
 "[T]he information shall be *signed* by the attorney for the Commonwealth ..." (Emphasis supplied).

5. The Judicial Code, 42 Pa.C.S.A. § 8931(e), provides as follows:
 "Disposition of Cases.—The district attorney shall *sign* all informations. The information shall be filed in the form prescribed by general rules." (Emphasis supplied).

[and] the Judicial Code...[6] *Id.*, 492 Pa. at 470, 424 A.2d at 1287.

However, the *Contakos* opinion makes clear that where a rubber stamp is employed to represent a district attorney's signature and an assistant district attorney initials the information near the stamped signature, the signature will be valid only if the requisite designation of authority for the assistant district attorney to so act has been filed with the clerk of courts pursuant to the mandate of 42 Pa.C.S.A. § 8931(i).[7] In the instant case, the Commonwealth apparently concedes that the proper designation of authority had not been filed at the time the information was stamped and initialed by the assistant district attorney. Appellant argues that because the designation of authority had not been filed *prior* to the filing of the information, but was instead filed only *after* the pretrial hearing which was conducted pursuant to appellant's motion to quash the information,[8] the information should now be quashed for alleged jurisdictional deficiencies and he discharged. We disagree.

The signature requirement of the Judicial Code, *supra,* is designed to assure the authenticity of an information and to guarantee that the district attorney has inquired fully into

6. *See also Commonwealth v. Dupree,* 290 Pa.Superior Ct. 202, 434 A.2d 201 (1980) and *Commonwealth v. Levenson,* 282 Pa.Super. 406, 422 A.2d 1355 (1980); *Commonwealth v. Devault,* 309 Pa.Superior Ct. 497, 455 A.2d 720 (1983); *Commonwealth v. Donley,* 309 Pa.Superior Ct. 280, 455 A.2d 159 (1983); *Commonwealth v. Spencer,* 308 Pa.Superior Ct. 483, 454 A.2d 638 (1982).

7. 42 Pa.C.S.A. § 8931(i) provides as follows:
 Definition.—As used in this section "district attorney" includes a special attorney appointed by the Attorney General in the manner provided by statute, an acting district attorney and any assistant district attorney whose authority to act for the district attorney under this section is evidenced by a written designation executed by the district attorney or acting district attorney and *filed with the clerk of courts.* (emphasis added).

8. The written designation of authority was, however, filed by the Commonwealth with the clerk of courts prior to the lower court's ruling on appellant's motion to quash.

all facts and circumstances attendant to a particular case and has made a reasoned evaluation of the propriety of initiating criminal proceedings against a defendant. *Commonwealth v. Levenson, supra. See also Commonwealth v. Emanuel,* 501 Pa. 581, 462 A.2d 653 (1983). We fail to perceive how these goals would be furthered in the instant case by quashing the information and discharging appellant simply because the Commonwealth filed the required designation of authority in a tardy manner. The designation of authority was filed with the clerk of courts prior to the rendering of a decision by the lower court on appellant's motion to quash the information and well in advance of the commencement of trial. Consequently, we reject appellant's argument that the filing of the designation of authority in this fashion denied the public "an official showing of the proper exercise of discretion by the District Attorney on whether or not there was sufficient evidence of the commission of a crime for which to prosecute the Defendant."

Moreover, we regard as equally untenable appellant's assertion that the actions of the district attorney in the case at bar unlawfully erodes the accountability of prosecuting officials to the public by cloaking the identity of those persons responsible for the institution of criminal actions.[9] Under the holding of *Commonwealth v. Emanuel, supra,* it is now clear that so long as the name of the government official authorizing the prosecution appears on the face of the information, whether in the form of a manually-subscribed signature or rubber stamp facsimile

9. We note, parenthetically, that appellant's argument in this respect invokes the policy underlying Pa.R.Crim.P. 225(b) as set forth in the Supreme Court's recent opinion in *Commonwealth v. Emanuel, supra.* Speaking for a majority of the Court, Justice Flaherty elaborated in *Emanuel* on the distinct goals sought to be achieved by Pa.R.Crim.P. 225(b) and Section 8931 of the Judicial Code, 42 Pa.C.S.A. § 8931. Justice Flaherty instructs that Rule 225 seeks only to assure that the identity of the prosecuting authority is perceptible and in no way implicates § 8931 of the Code which is concerned solely with the duty of the district attorney to sufficiently investigate the facts of a given case prior to instituting criminal proceedings against the accused.

signature,[10] there arises a rebuttable presumption that the information is valid. *Commonwealth v. Emanuel*, 501 Pa. at 587, 462 A.2d at 656. The instantly-challenged information which bears the rubber stamp signature of the District Attorney of Westmoreland County as well as the initials of an assistant district attorney, thus complies fully with the signature requirements set forth in Rule 225(b) and *Commonwealth v. Emanuel.*

■ Appellant also assigns as trial error the failure of the lower court, to adequately explain to the jury that the maxim "falsus in uno, falsus in omnibus" may be applied only to "material" misstatements of fact[11] made by a

10. The Court ruled in *Emanuel* that a rubber stamp facsimile signature, even in the absence of accompanying initials of an assistant district attorney, complies with the signature requirement of Rule 225(b).

11. With respect to this matter, the lower court charged the jury as follows:

"You have the sole responsibility of deciding whether the testimony of each witness is truthful and accurate, is to be believed or disbelieved in whole or in part. Among the factors that you may and should consider in deciding whether a witness's testimony is worthy of belief are the following: You should consider the witness's manner of testifying, how the witness looked, conducted him or herself and spoke while on the witness stand. In other words, was the witness candid? Evasive? How did that witness appear? You should consider the witness's intelligence and ability to observe and be informed about the matters to which he or she testified. You should consider that witness's ability to remember the events that were testified to. You should consider whether the witness was positive and certain or hesitant and doubtful about the matters to which he or she testified. You should consider whether the witness testified frankly and fairly or whether the witness showed favoritism or was biased in any way. You should consider whether the witness has anything to gain or lose from the outcome of to gain or lose by your verdict.

It's a matter of judgment or a matter of knowledge of human beings that sometimes a person will put their best foot forward, will color their testimony in their favor. I'm not saying that anybody has done this in this case, but I want you to be aware of the possibility of it in evaluating witness's testimony. You should consider whether and to what extent the witness's testimony is supported by or contradicted by other evidence in this case which you believe. *And there is a saying in the law, falsus in uno, falsus in omnibus, which means false in one, false in all things. That merely means that under the law if you believe, are convinced that a witness has told an untruth, you may*

witness. Although it is true that the court in fact omitted the word "material" in presenting the maxim to the jury, we find no cause for reversal. First, as the quoted portion of the transcript makes clear, the trial judge admonished the jury that it, as the ultimate judge of credibility, was free to accept or reject all or any portion of a witness's testimony after assessing such testimony in light of the various factors cited previously by the court in its general charge on credibility which immediately preceded the instantly-challenged reference to the maxim. Moreover, the court emphasized that the maxim was only one of the many considerations that should enter into the jury's decision as to whether it should attach any credence to a certain portion of a witness's testimony. Taking the charge as a whole as we must, it is clear that if in fact the court's omission is this regard had any tendency to prejudice appellant's case, such prejudice was obviated by the remainder of the court's charge which was more than adequate on the question of the credibility of witnesses. *Mount v. Bulifant*, 438 Pa. 265, 265 A.2d 627 (1970).[12]

*disregard that witness's entire testimony or you may accept that part of it that you believe to be true and reject that part of it that you believe to be false. After scrutinizing all the testimony and considering all the factors that I've outlined to you you may choose to be guided by in your deliberations and any other factors, you will give the testimony of each witness such credibility, if any, as you think it deserves."* (Emphasis supplied).

12. In previous cases, we have questioned the utility of the maxim. In *Commonwealth v. Levenson*, 282 Pa.Superior Ct. 406, 422 A.2d 1355 (1981), we quoted Professor Wigmore in expressing our concern as to the maxim's true value to jurors:

"It may be said, once for all, that the maxim is in itself worthless; —first, in point of validity, because in one form it merely contains in loose fashion a kernel of truth which no one needs to be told, and in the others it is absolutely false as a maxim of life; and *secondly, in point of utility, because it merely tells the jury what they may do in any event, not what they must do or must not do, and therefore it is a superfluous form of words.* It is also in practice pernicious, first, because there is frequently a misunderstanding of its proper force, and secondly, because it has become in the hands of many counsel a mere instrument for obtaining new trials upon points wholly unimportant in themselves." (Emphasis supplied).

*Id.*, 282 Pa.Superior Ct. at 415, 422 A.2d at 1360, *quoting* Wigmore, Evidence, § 1009 at 982 (Chadbourn rev. 1970) (footnotes omitted).

Appellant's contention that the Commonwealth failed to plead and prove an essential element of the offense of false imprisonment, *viz.*, that the victim was "unlawfully" restrained, is specious. First, an information will be regarded as sufficient in law so long as it serves to notify the accused of the charges filed against him or her.[13] The information in the case at bar provided as follows:

> The District Attorney of Westmoreland County, by this Information charges that on and about Tuesday, October 23, 1979, in the said county, Allen Wayne Williams did in the parking lot of Shop N Save Supermarket, located on Lowry Avenue, City of Jeannette, Westmoreland County, Pennsylvania, with intent to commit the crime of false imprisonment did commit an act, to-wit: Vonda Ortuglio, 707 Baughman Avenue, Jeannette, Pa. 15644, he, ALLEN WAYNE WILLIAMS constituting a substantial risk toward the commission of a crime, to-wit: On the above said date, and at the above said location, he, ALLEN WAYNE WILLIAMS grabbed the said Vonda Ortuglio by the sweater and did attempt to pull her into a vehicle so as to interfere substantially with her liberty, the said Vonda Ortuglio did manage to pull herself away and ran into the store, all of which is against the peace and dignity and the General Assembly of the Commonwealth of Pennsylvania.
>
> Signed,
> Albert M. Nichols
> Attorney for the Commonwealth.

Violation of Section 901 of the Pennsylvania Crimes Code.

Clearly, then, the information afforded appellant with adequate notice of the charges brought against him. Moreover, the testimony of the victim at trial leaves no doubt that appellant's actions occurred against the will of Mrs. Ortuglio and without her consent.

Finally, appellant argues that the suppression court erred in failing to suppress a photograph of appellant as being

**13.** *See,* e.g., *Commonwealth v. Allen,* 291 Pa.Superior Ct. 366, 435 A.2d 1270 (1981); *Commonwealth v. Rolinski,* 267 Pa.Superior Ct. 199, 406 A.2d 763 (1979).

unduly suggestive,[14] and that the Commonwealth failed to meet its burden of proving that the identification procedure employed by the State Police was not unduly suggestive.

As previously stated, appellant challenged the legitimacy of the identification procedure in his amended omnibus pre-trial motion. Prior to the hearing conducted by the lower court pursuant to appellant's motion to suppress, the parties stipulated to the following facts: the offense occurred in Jeannette, Pennsylvania; after the incident occurred, the State Police presented for the victim's review an array of photographs which contained appellant's picture; the picture was taken after a prior arrest of appellant for his alleged commission of a crime for which he was ultimately discharged; the photograph depicted appellant wearing a sign around his neck on which were inscribed the words "Police Dept., Jeannette, Pa."; the victim identified this picture as that of her assailant; and, on the basis of such identification, a complaint and warrant for appellant's arrest were issued. The Commonwealth introduced no testimony whatsoever at the suppression hearing and entered into evidence only the display of photographs and the above-recited stipulation of facts.

It is certain that a pre-trial identification, where obtained by a procedure "so unnecessarily suggestive and conducive to irreparable mistaken identification" that it denies the accused due process of law, will be held inadmissable at trial. *Stovall v. Denno,* 388 U.S. 293, 302, 87 S.Ct.

**14.** Appellant further maintains that the court erred in allowing the picture to be introduced into evidence at trial with the offensive police department designations excised from the photograph. Although appellant raises this issue in the latter half of item number three in the "Statement of Questions Involved" section of his appellate brief, he does not actually address the matter in the "Argument" section of the brief. Pa.R.A.P. 2119(a) requires that the "Argument" separately address each claim presented upon pain of waiver. Insofar as appellant has failed to afford us the benefit of the facts and applicable law surrounding this issue, we decline the request to resolve it on appeal. *See Commonwealth v. Jackson,* 494 Pa. 457, 431 A.2d 944 (1981); and *Commonwealth v. Colbert,* 476 Pa. 531, 383 A.2d 490 (1978) (opinion in support of affirmance).

1967, 1972, 18 L.Ed.2d 1199 (1967). *See also United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). Both the Rules of Criminal Procedure [15] and established case law [16] impose upon the Commonwealth the duty of proving, in the face of a defendant's challenge to the propriety of an identification, that such identification was not accomplished through an unduly suggestive procedure. The accused is entitled to a pre-trial evidentiary hearing to determine the admissibility of the identification. *Commonwealth v. Lee, supra; Commonwealth v. Jenkins*, 232 Pa.Superior Ct. 523, 335 A.2d 463 (1974); and *Commonwealth v. McMillion*, 215 Pa.Superior Ct. 306, 265 A.2d 375 (1969). At the suppression hearing, if the court finds that the pre-trial identification procedure was tainted with suggestiveness, the Commonwealth is then required to prove by clear and convincing evidence that a witness's in-court identification of the accused, has an independent origin [17]

---

**15.** Pa.R.Crim.P. 323(h) states that
The Commonwealth shall have the burden of going forward with the evidence and of establishing that the challenged evidence was not obtained in violation of the Defendant's rights. The Defendant may testify at such hearing, and, if he does so, does not thereby waive his right to remain silent during trial.

**16.** *See*, e.g., *Commonwealth v. Brown*, 302 Pa.Superior Ct. 80, 448 A.2d 535 (1982); and *Commonwealth v. Lee*, 262 Pa.Superior Ct. 280, 396 A.2d 755 (1978).

**17.** In *Commonwealth v. Slaughter*, 482 Pa. 538, 394 A.2d 453, our Supreme Court, *quoting* from *United States v. Higgins*, 458 F.2d 461 (3d Cir.1972), adopted the following criteria for determining the reliability of an in-court identification:
"(1) the manner in which the pretrial identification was conducted; (2) the witness' prior opportunity to observe the alleged criminal act; (3) the existence of any discrepancies between the defendant's actual description and any description given by the witness before the photographic identification; (4) any previous identification by the witness of some other person; (5) any previous identification of the defendant himself; (6) failure to identify the defendant on a prior occasion; and (7) the lapse of time between the alleged act and the out-of-court identification."
*Id.*, 482 Pa. at 546, 394 A.2d at 453, *quoting* 458 F.2d at 465. *See also Commonwealth v. Smith*, 290 Pa.Superior Ct. 33, 434 A.2d 115 (1981); *Commonwealth v. Scott*, 469 Pa. 258, 365 A.2d 140 (1976); *Commonwealth v. Zabala*, 303 Pa.Superior Ct. 72, 449 A.2d 583 (1982).

sufficiently distinguishable from the illegal pre-trial identification so as to be purged of the primary taint. *Commonwealth v. Glover*, 488 Pa. 459, 412 A.2d 855 (1980); *Commonwealth v. Bogan*, 482 Pa. 151, 393 A.2d 424 (1978); *Commonwealth v. Thomas*, 278 Pa.Superior Ct. 39, 419 A.2d 1344 (1980).

The Rules of Criminal Procedure require the suppression court, at the conclusion of the hearing, to

"enter on the record a statement of findings of fact and conclusions of law as to whether the evidence was obtained in violation of the defendant's rights, or in violation of these rules or any statute, and shall make an order granting or denying the relief sought." Pa.R. Crim.P. 323(i).

In reviewing an order denying a defendant's motion to suppress, our function is to determine

"whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those findings. In making this determination, we consider only the evidence of the prosecution's witnesses and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted."

*Commonwealth v. W.P.*, 302 Pa.Superior Ct. 66, 69, 448 A.2d 97, 98–98 (1982), *quoting Commonwealth v. Hunt*, 280 Pa.Superior Ct. 205, 207–08, 421 A.2d 684–85 (1980).

The suppression court in the case at bar did not comply with the dictates of Pa.R.Crim.P. 323(i) in that it did not enter on the record at the conclusion of the hearing a statement of findings of fact and conclusions of law with regard to the alleged suggestiveness of the photographs from which the victim made a pre-trial identification of appellant. Moreover, we are puzzled by the suppression court's ruling on appellant's motion insofar as the remedy fashioned by the court was not responsive to the concerns voiced by defense counsel during the hearing that the photograph created a substantial possibility of misidentifica-

tion. The transcript of the hearing reveals that the court itself regarded the photograph as prejudicial and suggestive. However, instead of requiring the Commonwealth to establish by clear and convincing evidence that the victim's in-court identification of appellant enjoyed an independent basis that cleansed it of the suggestiveness engendered by the pre-trial photographic identification, *see Commonwealth v. Glover, supra,* the suppression court merely ordered that the police department designation on the photograph be excised for trial. The Commonwealth introduced no testimony whatsoever at the hearing [18]; the only evidence offered to the court was the photo array and the above stipulated facts which themselves offer little insight into the pre-trial identification procedure.

Despite the errors committed by the lower court in its disposition of the suppression issues raised by appellant, we perceive no reason to remand the case for another suppression hearing since the trial transcript affords us with abun-

---

**18.** Appellant argues that the victim's identification of appellant should have been suppressed owing to the failure of the victim to testify at the suppression hearing. Appellant cites as support for his position our decision in *Commonwealth v. Lee, supra,* wherein we adopted a per se rule requiring the suppression of identification evidence in cases in which the identifying witness fails to testify at the suppression hearing. We reject this contention, however, since it is clear that the per se rule enunciated in *Lee* was expressly abrogated by our recent decision in *Commonwealth v. Thompkins,* 311 Pa.Superior Ct. 357, 457 A.2d 925 (1983) (reargument denied March 29, 1983) (petition for allocatur denied May 16, 1983). In *Thompkins,* we ruled that "[e]ven though the observations of an identifying witness are important considerations at a suppression hearing, this testimony is not constitutionally mandated." *Id.,* 311 Pa.Superior Ct. at 362, 457 A.2d 927. With regard to the ability of the Commonwealth to meet its burden of proof at the suppression hearing without producing the identifying witness, the following factors, relating to the *reliability* of a pre-trial identification, are operative:

... the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself. ·

*Id.,* 311 Pa.Superior Ct. at 363, 457 A.2d at 928, *quoting Manson v. Brathwaite,* 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140, 154 (1977). *See* discussion *infra.*

dant evidence [19] from which to conclude that the victim's identification of appellant as her assailant enjoyed an independent basis sufficiently distinct from the suggestive pretrial photographic identification so as to be purged of the original taint.

Testimony elicited from Vonda Ortuglio at trial established that, despite the relative brevity of the incident which gave rise to the instant prosecution, there was "absolutely no question" that appellant was the person who attacked her in the Shop N Save supermarket parking lot because she had endured unusual and unsettling encounters with appellant on two separate occasions earlier in that same month.[20] Mrs. Ortuglio explained that the first such incident occurred at approximately 6:15 a.m. on the first Saturday of October, 1979. Having just seen her husband off to work, Mrs. Ortuglio heard a rattling noise emanating from her front porch. Investigating further, she observed someone attempting to open her front door. Thinking that her husband had returned home, Mrs. Ortuglio prepared to open the front door and in doing so viewed appellant through the glass window of the door jiggling the doorknob from the outside. Mrs. Ortuglio testified: "[t]here was just the glass between us ... I saw his face." She noted further that appellant was wearing a sweatshirt and dark-colored trousers and was carrying a flashlight. Frightened, Mrs. Ortuglio crawled across the livingroom floor to a telephone and alerted the police.

19. Our courts have consistently adhered to the principal that an appellate court may consider *all* testimony on record in determining whether certain evidence was admissable at trial, and not solely the testimony elicited during the suppression hearing. *See Commonwealth v. Chacko*, 500 Pa. 571, 459 A.2d 311 (1983); *Commonwealth v. Carr*, 292 Pa.Superior Ct. 137, 436 A.2d 1189 (1981); *Commonwealth v. Kaschik*, 235 Pa.Superior Ct. 388, 344 A.2d 519 (1975).

20. In *Commonwealth v. Johnson*, 261 Pa.Superior Ct. 566, 436 A.2d 645 (1981), we ruled that a sufficiently independent basis for an in-court identification may be found where a witness had seen the accused on occasions prior to the crime. *See* also *Commonwealth v. McKelvie*, 471 Pa. 541, 370 A.2d 1155 (1977).

Vonda Ortuglio testified that her second encounter with appellant occurred approximately one week later while she was working at the meat counter at the supermarket. She stated that she was sweeping the floor behind the counter when she glanced upwards and observed appellant standing before her at the counter. Mrs. Ortuglio stated that she became frightened insofar as she "immediately recognized him" from the incident that took place at her home on the previous weekend morning. Mrs. Ortuglio, upon being asked by appellant if she recognized him, dropped her broom and retreated to a back room to telephone the police.

The above-discussed testimony affords an ample basis for holding that the victim's identification of appellant as her assailant was grounded upon an entirely independent set of circumstances. First, it is clear from the record that Vonda Ortuglio was unwavering in asserting that appellant was the person who attempted to pull her into an automobile in the parking lot of the Shop N Save Supermarket on October 23, 1979. Second, the basis for her unflinching identification is easily perceived: she had the opportunity to view his face and features on *two* prior occasions and, during the second incident which transpired at the supermarket meat counter, actually heard him speak to her in a manner which served to reinforce her conviction that appellant was the same individual who attempted to enter her house on a previous Saturday morning. Third, Mrs. Ortuglio supplied investigating state troopers with a description of appellant's height, weight and physical characteristics which corresponded in substantial part with appellant's actual description. Fourth, Mrs. Ortuglio never failed to identify appellant after the attack except when asked to review a photographic array which did not contain appellant's picture. Finally, relatively little time elapsed between her confrontation with appellant at the scene of the crime and her selection of appellant's picture from the second photo array.

Given the totality of the circumstances surrounding the instantly-challenged identification, we believe that its relia-

530

bility is impregnable and, consequently, reject appellant's assertion to the contrary.

Order Affirmed.