J-S48022-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| DANIEL ODEM, JR., | : | |
| | : | |
| Appellant | : | No. 2028 WDA 2014 |

Appeal from the Judgment of Sentence November 14, 2014,
Court of Common Pleas, Mercer County,
Criminal Division at No. CP-43-CR-0001612-2013

BEFORE:  PANELLA, DONOHUE and WECHT, JJ.

MEMORANDUM BY DONOHUE, J.:                    **FILED OCTOBER 27, 2015**

Appellant, Daniel Odem, Jr. ("Odem"), appeals from the judgment of

sentence entered on November 14, 2014 in the Court of Common Pleas,

Mercer County.  For the reasons set forth herein, we affirm.

The trial court provided a brief summary of the factual and procedural

history as follows:

> On October 10, 2013, at approximately 2:00 a.m.,
> Leonard Figgins [("Figgins")] was walking down
> Front Street in the City of Farrell when a car driven
> by [Odem] pulled up next to him.  Figgins walked
> over to the car and the passenger window was
> opened.  Just as Figgins got to the window, Sean
> Rain [("Rain")] "popped up" from the passenger seat
> and fired a shot at Figgins.  Figgins fled and Rain
> pursued him on foot firing four (4) more shots.  The
> third shot hit Figgins in the upper part of his right
> arm shattering the bone.
>
> Sergeant Charles Rubano [("Sergeant Rubano")] of
> the  Southwest  Mercer  County  Regional  Police

Department was in the area at the time the shooting took place. He saw two (2) individuals exit the vehicle. Inside the vehicle, two (2) guns were found on the passenger side floor. One of the guns had five (5) spent casings in the magazine.

[Odem] was apprehended shortly thereafter following a chase on foot.

[Odem] was charged with two (2) counts of Aggravated Assault, two (2) counts of Firearms Not to be Carried without a License, two (2) counts of Recklessly Endangering Another Person, Discharge of a Firearm into an Occupied Structure, Attempted Murder, Criminal Conspiracy to Commit Aggravated Assault and Criminal Conspiracy to Discharge a Firearm into an Occupied Structure.

A preliminary hearing was held on October 24, 2012, before Magisterial District Judge Ronald Antos. At the conclusion of that hearing, the charges of Attempted Murder, Aggravated Assault and Discharge of a Firearm into an Occupied Structure were dismissed and the balances of the charges were held for trial.

[Odem] was arraigned on December 23, 2013, on the charges of Firearms Not to be Carried Without a License, two (2) counts, Recklessly Endangering Another Person, Criminal Conspiracy to Commit Aggravated Assault under 18 Pa.C.S.[A.] § 2702(a)(1); Criminal Conspiracy to Commit Aggravated Assault under 18 Pa.C.S.[A.] § 2701(a)(4) and Criminal Conspiracy to Commit Discharge of a Firearm into an Occupied Structure. On August 27, 2014, the Commonwealth filed a Motion to Amend the Information to include the charges of Attempted Murder and Criminal Conspiracy to Commit Murder. The Motion was denied on September 8, 2014.

A jury trial commenced on September 16, 2014. During the trial, on [m]otion of the Commonwealth,

the [i]nformation was amended to include charges of Aggravated Assault under sub-sections (a)(1) and (a)(4) and Discharge of a Firearm into an Occupied Structure solely on a theory of conspiratorial liability. A Directed Judgment of Acquittal was granted at the close of the Commonwealth's case on the charges of Discharge of a Firearm into an Occupied Structure and Criminal Conspiracy to Discharge a Firearm into an Occupied Structure.

On September 19, 2014, the jury returned verdicts of guilty on all the remaining charges.

[Odem] was sentenced on November 14, 2014, to a term of imprisonment of not less than three (3) years nor more than 15 years on the charge of Aggravated Assault F-1 and concurrent terms of imprisonment on the remaining counts.

Trial Court Opinion, 1/16/15, 1-3 (internal citations omitted).

Odem timely filed a notice of appeal on December 10, 2014. On appeal, Odem raises the following issues for our review,[1] which we have reordered for ease of disposition:

I. Did the trial court err in amending the information?

II. Did the trial court err in failing to dismiss the case based upon a ***Brady*** violation?

III. Did the trial court err in failing to instruct the jury that a negative inference could be drawn in the Commonwealth not providing video surveillance?

IV. Did the trial court err in instructing the jury on the charge of conspiracy?

---

[1] We note that in his Concise Statement of Errors Complained of on Appeal, Odem raised eight issues. Odem, however, has only presented four issues in his brief, and accordingly, we only address these issues.

Odem's Brief at 4.

For his first issue on appeal, Odem argues that the trial court erred in amending the criminal information on the second day of trial to include charges of aggravated assault attempt to cause serious bodily injury, 18 Pa.C.S.A. § 2702(a)(1)[2], and aggravated assault with a deadly weapon, 18 Pa.C.S.A. § 2702(a)(4)[3]. Odem's Brief at 15. The record reflects that at the conclusion of the second day of trial, the Commonwealth requested the trial court to add the two counts of aggravated assault under an accomplice theory. N.T., 9/17/14, at 187-88. Counsel for Odem immediately objected to the amendment. *Id.* at 188-89. Despite defense counsel's objection, the trial court permitted the amendment, explaining that the amendments would not be permitted under accomplice liability as requested by the Commonwealth, but rather, would be included under conspiracy liability. *Id.* at 189-90. In so doing, the trial court stated, "I understand that accomplice is a little different concept, and I can see the prejudice there. … I will permit the amendment on the theory that it will come in as conspirator, not accomplice liability." *Id.* The trial court further explained, "When you are

---

[2] "(a) **Offense defined.**--A person is guilty of aggravated assault if he: (1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S.A. § 2702(a)(1).

[3] "(a) **Offense defined.**--A person is guilty of aggravated assault if he: (4) attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon." 18 Pa.C.S.A. § 2702(a)(4).

charged with a conspiracy and if you are convicted you can be subject to conviction under the underlying charge. It's a given." *Id.* at 189. On appeal, Odem contends that he was prejudiced by the amendments because he had to employ a different trial strategy and did not have additional time to prepare a defense. *Id.* at 15-16.

Rule 564 of the Pennsylvania Rules of Criminal Procedure provides that "[t]he court may allow an information to be amended when there is a defect in form, the description of the offense(s), the description of any person or any property, or the date charged, provided the information as amended does not charge an additional or different offense." Pa.R.Crim.P. 564. As this Court held in *Commonwealth v. Sinclair*, 897 A.2d 1218 (Pa. Super. 2006), when presented with a challenge to the propriety of an amendment, we must consider

> [w]hether the crimes specified in the original indictment or information involve the same basic elements and evolved out of the same factual situation as the crimes specified in the amended indictment or information. If so, then the defendant is deemed to have been placed on notice regarding his alleged criminal conduct. If, however, the amended provision alleges a different set of events, or the elements or defenses to the amended crime are materially different from the elements or defense to the crime originally charged, such that the defendant would be prejudiced by the change, then the amendment is not permitted.

* * *

> In reviewing a grant to amend an information, [this] Court will look to whether the appellant was fully apprised of the factual scenario which supports the charges against him. Where the crimes specified in the original information involved the same basic elements and arose out of the same factual situation as the crime added by the amendment, the appellant is deemed to have been placed on notice regarding his alleged criminal conduct and no prejudice to defendant results.

*Id*. at 1222 (citations omitted).

This Court has held that "[r]elief is only proper where the amendment prejudices the defendant." ***Commonwealth v. Veon***, 109 A.3d 754, 768 (Pa. Super. 2015) (citing ***Sinclair***, 897 A.2d at 1223). To determine whether an amendment results in prejudice, we must consider the following:

> (1) whether the amendment changes the factual scenario supporting the charges; (2) whether the amendment adds new facts previously unknown to the defendant; (3) whether the entire factual scenario was developed during a preliminary hearing; (4) whether the description of the charges changed with the amendment; (5) whether a change in defense strategy was necessitated by the amendment; and (6) whether the timing of the Commonwealth's request for amendment allowed for ample notice and preparation.

***Veon***, 109 A.3d at 768.

In this case, Odem had already been charged with conspiracy to commit aggravated assault. The amendment to the criminal information added two offenses of aggravated assault under 18 Pa.C.S.A. §§ 2702(a)(1), (a)(4). Odem asserts that the amendment necessitated a change in defense strategy, as he would have to "disprove that [Rain] specifically intended to

cause injury to the victim." Odem's Brief at 15-16. The trial court, however, found that Odem's claim was meritless since the charges arose out of the same factual situation and "[h]is defense would be the same because he had to prevail on the conspiracy charges to be acquitted." Trial Court Opinion, 1/16/15, at 5. After our review of the record, we agree.

Odem knew at the time the charges against him were originally filed that the Commonwealth sought to prove that he and Rain conspired to attack the victim. The amendment to include the substantive offenses of aggravated assault arose out of the conspiracy charges and did not add any additional facts unknown to Odem. Rather, the amendment involved the "same basic elements and arose out of the same factual situation" as the original information. *See Sinclair*, 897 A.2d at 1222.

Moreover, the amended information did not require Odem to change his defense since the substantive offenses were the underpinnings of the conspiracy charges. Odem was still required to present a defense to the conspiracy charges with which he was already charged and thus, was required to disprove a conspiracy between him and Rain to commit aggravated assault. Prevailing on the conspiracy charges would exculpate him of the substantive offenses. Since the amended information did not require Odem to change his defense, Odem's contention that he did not have adequate time to prepare since the amendment occurred at the conclusion

of the second day of trial lacks merit. Accordingly, we conclude that Odem failed to establish that the amendment resulted in prejudice.

Odem also asserts that the trial court erred by amending the criminal information sua sponte. Odem's Brief at 16. Odem supports the trial court's decision to deny the Commonwealth's attempt to amend the information under an accomplice liability theory, but argues that the trial court did not have the authority to permit the amendment under a conspiracy theory. *Id.* at 17.

In support of his position, Odem relies upon *Commonwealth v. Donaldson*, 488 A.2d 639 (Pa. Super. 1985), wherein this Court held that a "trial court was without authority to sua sponte add a charge to the information." *Id.* at 641 (italicization omitted). In *Donaldson*, the defendant was arrested based on a complaint filed by police that alleged he "intentionally, knowingly and recklessly cause[d] bodily injury … under circumstances manifesting extreme indifference to the value of human life" when he shot an individual in the back with a rifle. *Id.* Following the preliminary hearing, the Commonwealth filed a criminal information charging the defendant with felony aggravated assault under 18 Pa.C.S.A. § 2702(a)(1). *Id.* at 641. The defendant moved to quash the felony aggravated assault charge from the information, claiming that "the initial police complaint and preliminary hearing did not cover the charge of felony Aggravated Assault." *Id.* The trial court agreed with the defendant and

amended the information sua sponte to include misdemeanor aggravated assault under 18 Pa.C.S.A. § 2702(a)(4). **Id.** The Commonwealth appealed.

On appeal, this Court concluded that "the charge of Aggravated Assault under 18 Pa.C.S.[A.] § 2702(a)(4) was improperly added to the Information." **Id.** at 642. The **Donaldson** Court found that "[b]y adding, on its own motion, the misdemeanor count to the Information, the [trial] court removed from the district attorney the opportunity to fully review this new charge that would have been included on the Information above the district attorney's signature" and thus, the district attorney would not have had the opportunity to make a "reasoned evaluation of the propriety of initiating criminal proceedings against the defendant." **Id.** (citing **Commonwealth v. Williams**, 470 A.2d 1376, 1380 (Pa. Super. 1984) ("the signature requirement 'is to assure the authenticity of an information and to guarantee that the **district attorney** has inquired fully into all facts and circumstances attendant to a particular case and has made a reasoned evaluation of the propriety of initiating criminal proceedings against defendant.'") (emphasis in original)).

Unlike the trial court in **Donaldson**, however, the trial court in this case did not add the charges of aggravated assault on the amended information sua sponte, but rather, included the offenses based on the Commonwealth's motion. The Commonwealth's motion to include the

charges of aggravated assault demonstrated its intent to hold Odem responsible for the substantive crimes committed by Rain in furtherance of the conspiracy. The Commonwealth's motion was grounded on an improper theory, however, as Odem was never charged under a theory of accomplice liability. The trial court's actions in this instance (permitting the amendment based on conspiracy theory rather than accomplice liability) did not remove from the Commonwealth the opportunity to make "a reasoned evaluation of the propriety of initiating criminal proceedings against [Odem]." **See Donaldson**, 488 A.2d at 642. Instead, the trial court permitted the Commonwealth to amend the information to include the substantive offenses that they requested, albeit based upon a different theory of liability than the one proffered by the Commonwealth, to accomplish its goal of holding Odem responsible for the actions of his co-conspirator. The Commonwealth did not object to the different theory of liability, evidencing its continued approval of the propriety of the amendments. Thus, **Donaldson** does not support Odem's argument in this case. Odem is not entitled to relief on his first issue.

For his second issue on appeal, Odem argues that the trial court erred by failing to dismiss the case against him when the Commonwealth failed to produce a video recording from the several video cameras installed throughout the city that allegedly captured the incident. Odem's Brief at 24-28. The record reflects that at the preliminary hearing, Sergeant Rubano

testified that a video camera captured an individual "running across the apartment buildings and then out of sight and then up this way to Fruit Avenue." N.T., 10/24/13, at 42-43. Sergeant Rubano further stated that the video needed to be enhanced and that he could not say whether the person in the video was the driver, the passenger, or anyone in the vehicle. *Id*. at 43.

During pre-trial discovery, Odem requested that the Commonwealth disclose the video recording that Sergeant Rubano referenced during the preliminary hearing. On March 10, 2014, the trial court entered an order, directing the Commonwealth to "notify [Odem] on or before March 31st, 2014, whether or not there is a video depicting where the incident took place and if it shows [Odem's] vehicle." Trial Court Order, 3/10/14, at 1-2. The Commonwealth failed to comply. On April 8, 2014, in response to the Commonwealth's failure to comply with the trial court's March 10, 2014 order, Odem filed a motion to compel discovery. The trial court granted Odem's motion to compel on April 9, 2014 and ordered as follows: "The Commonwealth shall this date make available to the defense the video surveillance capturing a portion of the alleged incident[.]" Trial Court Order, 4/9/14, at 1. The Commonwealth failed to comply with the trial court's April 9, 2014 order to produce the video recording. Furthermore, despite Sergeant Rubano's testimony at the preliminary hearing, the Commonwealth informed Odem prior to trial that there was no video of the incident.

When questioned at trial regarding the video he previously referenced, Sergeant Rubano waivered in his testimony, initially stating that he did not believe that he ever saw the video Odem and his counsel were requesting. N.T., 9/16/13, at 69-70. Sergeant Rubano then changed course and testified that he recalled testifying at the preliminary hearing that he saw the video, but that the video was of no value because no one could be identified from the video. *Id.* at 70. The Commonwealth thereafter attempted to introduce testimony explaining that the video recording did not exist because the police department did not preserve it since it was of no value. *Id.* at 70. The trial court precluded the Commonwealth from introducing this testimony, however, as a sanction for failing to produce the video recording during pre-trial discovery. *Id.*

On appeal, Odem asserts that the video recording would have affected the outcome of the trial and thus, the Commonwealth violated the principles of *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to produce the video recording, requiring dismissal of charges against him. Odem's Brief at 27-28. In *Brady*, the United States Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. In order to establish that the Commonwealth committed a *Brady* violation, the defense must demonstrate that: (1) the evidence was

suppressed by the Commonwealth, either willfully or inadvertently; (2) the evidence was favorable to the defendant; and (3) the evidence was material, in that its omission resulted in prejudice to the defendant. ***Commonwealth v. Antidormi***, 84 A.3d 736, 747 (Pa. Super. 2014) (citing ***Commonwealth v. Haskins***, 60 A.3d 538, 545 (Pa. Super. 2012)).

Here, it is undisputed that the Commonwealth failed to produce the video recording. Odem contends that the evidence from the video recording was favorable and material to his defense, as it "would have completely undermined the victim's credibility and support[ed] [Odem's] theory of the case that the vehicle never stopped, the codefendant never exited and pursued the victim and that [Odem] never acted in concert by waiting for the codefendant." Odem's Brief at 26-27. Despite Odem's assertions, however, we are unable to make a determination of the favorability or materiality of the evidence since the contents of the video recording are unknown and will remain unknown given the Commonwealth's failure to preserve the video.

In these instances, where the evidence was destroyed before the defense had the opportunity to examine the evidence and is therefore, only potentially useful, ***Brady*** does not govern our determination of whether or not a due process violation occurred. Instead, evidence that is only potentially useful constitutes a separate category of evidence to which a defendant has constitutionally guaranteed access under the Due Process

Clause of the Fourteenth Amendment. *Commonwealth v. Chamberlain*, 30 A.3d 381, 402 (Pa. 2011). In these cases, a determination of whether a due process violation has occurred is governed by *Arizona v. Youngblood*, 488 U.S. 51 (1988). *Commonwealth v. Feese*, 79 A.3d 1101, 1109 (Pa. Super. 2013).

In *Youngblood*, the defendant was convicted of child molestation, sexual assault, and kidnaping. *Youngblood*, 488 U.S. at 52. The police improperly preserved the blood, saliva, and semen samples that were collected from the victim and his clothing. *Id.* at 52-54. Thus, the samples, when subjected to testing, provided inconclusive results. *Id.* at 54-55.

After being convicted based on the victim's identification of the defendant as the perpetrator, the defendant filed an appeal to the United States Supreme Court, asking the high court to determine whether the omission of evidence that was destroyed by the state, which had the potential to exonerate him, deprived the defendant of a fair trial. The *Youngblood* Court held:

> The Due Process Clause of the Fourteenth Amendment, as interpreted in *Brady*, makes the good or bad faith of the State irrelevant when the State fails to disclose to the defendant material exculpatory evidence. But we think the Due Process Clause requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant.

- 14 -

*Id.* at 57.  Thus, the Supreme Court concluded that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law."  *Id.* at 58.

In this case, Odem failed to present any evidence or argument relevant to *Youngblood* to establish that the police acted in bad faith.  Instead, Odem focused his argument that the Commonwealth's failure to produce the video recording requires dismissal of the charges against him on establishing a *Brady* violation.  As *Brady* is not the proper inquiry in this instance, we conclude that Odem has not preserved the proper argument for appeal, and his claim is accordingly waived.  *See Commonwealth v. Rush*, 959 A.2d 945, 949 (Pa. Super. 2008) ("[F]or any claim that was required to be preserved, this Court cannot review a legal theory in support of that claim unless that particular legal theory was presented to the trial court."); Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").  Whether counsel provided ineffective assistance by failing to preserve the *Youngblood* issue for appeal may be raised, if appropriate, on collateral review.

For his final two issues on appeal, Odem challenges the trial court's jury instructions.  Our standard of review provides that

> [w]hen reviewing a challenge to part of a jury instruction, we must review the jury charge as a whole to determine if it is fair and complete.  A trial

> court has wide discretion in phrasing its jury instructions, and can choose its own words as long as the law is clearly, adequately, and accurately presented to the jury for its consideration. The trial court commits an abuse of discretion only when there is an inaccurate statement of the law.

*Commonwealth v. Roser*, 914 A.2d 447, 455 (Pa. Super. 2006) (quoting *Commonwealth v. Einhorn*, 911 A.2d 960 (Pa. Super. 2006)).

Odem first asserts that the trial court erred by failing to instruct the jury that a negative inference could be drawn from the Commonwealth's failure to provide the video surveillance of the incident. Odem's Brief at 18. After our review of the record, however, we conclude that Odem failed to preserve this issue for appeal.

It is well settled that

> [a] specific and timely objection must be made to preserve a challenge to a particular jury instruction. Failure to do so results in waiver. Generally, a defendant waives subsequent challenges to the propriety of the jury charge on appeal if he responds in the negative when the court asks whether additions or corrections to a jury charge are necessary.

*Commonwealth v. Charleston*, 16 A.3d 505, 527-28 (Pa. Super. 2011) (quoting *Commonwealth v. Moury*, 992 A.2d 162, 178 (Pa. Super. 2010)).

In this case, the record reflects that the trial court denied Odem's request for a negative inference instruction.

> DEFENSE COUNSEL: What about an adverse inference for the videotapes that they had in their

> possession and didn't -- I believe that's 4 -- there is a section for adverse inference.
>
> THE COURT: I'm not going to give that one. No. They are saying there is nothing on there to show that your client did it, so there is nothing in there to show that he's done it and he's guilty of this.

N.T., 9/18/14, at 92-93. Odem did not lodge an objection to the trial court's ruling. After the jury was given its instructions, the trial court asked defense counsel whether he had any additions or corrections, to which counsel responded, "No additions or corrections, just exceptions." *Id.* at 122. Defense counsel presented one exception, which did not relate to the negative inference instruction. Accordingly, pursuant to Rule 647(B) of the Pennsylvania Rules of Criminal Procedure, this issue was not preserved for appellate review. Pa.R.Crim.P. 647(B) ("No portions of the charge nor omissions from the charge may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate."); *see also* Pa.R.A.P. 302(b) ("A general exception to the charge to the jury will not preserve an issue for appeal. Specific exception shall be taken to the language or omission complained of.").

Second, Odem assails the trial court's jury instruction regarding conspiracy. Odem's Brief at 28-31. Odem contends that the trial court's instruction was prejudicial in this case because it "instructed the jury that it could infer [Odem's] guilt by his mere presence at the scene[.]" *Id.* at 29-

- 17 -

30. Odem specifically challenges the following portion of the trial court's instruction:

> Now, you cannot infer from the fact that he was present when the crime was committed that he was part of the conspiracy. You must look at all the other factors. So him just sitting in the car when it happens, that alone does not promote conspiracy. But if you find that he did other things, such as drove there, such as assisted him in having the crime committed, that goes beyond mere presence.

N.T., 9/18/14, at 117-18.

On appeal, Odem asserts that "[t]he only reason [he] was present at the scene of the crime was because he was driving with [] Rain at the time the incident occurred." Odem's Brief at 29. Odem argues that since the trial court instructed the jury that driving to the scene goes beyond mere presence and is sufficient evidence to infer the existence of a conspiracy, and since "[t]he only evidence presented by the Commonwealth to prove that [Odem] conspired with [] Rain to shoot the victim was that [Odem] was driving his vehicle at the time [] Rain fired the weapon[,]" the trial court "explicitly informed the jury that it could infer guilt from [his] mere presence as the driver of a vehicle[.]" *Id.* at 29-30. Thus, Odem asserts that the trial court's instruction "foreclosed any possibility of the jury returning a verdict

- 18 -

in [his] favor" and accordingly, was prejudicial. ***Id*.** at 29, 31. After reviewing the record, we disagree.[4]

Although Odem contests the accuracy of the trial court's statement of the law (that driving to the scene constitutes more than mere presence and is sufficient evidence to infer a conspiracy), we conclude that the trial court did not err. This Court previously concluded that "[t]he driver of a getaway car can be found guilty as a co-conspirator if it is reasonable to infer that he was aware of the actual perpetrator's intention." ***Commonwealth v. Davalos***, 779 A.2d 1190, 1194 (Pa. Super. 2001).

In ***Davalos***, the appellant was driving his car with his friend as a passenger. ***Id*.** at 1192. The appellant, after driving by a bar five times,

---

[4] Contrary to the trial court's determination that Odem waived this issue for appeal, ***see*** Trial Court Opinion, 1/16/15, at 4, our review of the record reveals that Odem preserved this issue. After the jury heard instructions, defense counsel offered an exception to the trial court's instructions with regard to conspiracy, stating:

> My exception is when you talked about being present. The Court indicated essentially that if you drove them there, you did more, so the Court is basically saying the fact that he drove. Mr. Rain is in the car. That's more than simply being present. I don't think that's an accurate basis of the law. That's my exception.

N.T., 9/18/14, at 122-23. As this exception noted the specific language complained of, we conclude that Odem preserved the issue. ***See Charleston***, 16 A.3d at 527-28; ***see also*** Pa.R.A.P. 302(b) ("A general exception to the charge to the jury will not preserve an issue for appeal. Specific exception shall be taken to the language or omission complained of.").

"stopped his car and lowered the passenger window" at which time, his passenger fired eight gun shots at a group of four men. *Id.* The appellant was charged with and convicted of two counts of aggravated assault and criminal conspiracy. *Id.* The appellant filed an appeal contesting the sufficiency of the evidence to establish that he was involved in a criminal conspiracy with the passenger. *Id.* at 1193.

The *Davalos* Court held that "a conspiracy may be proven inferentially by showing the relation, conduct, or circumstances of the parties, and the overt acts of alleged co-conspirators are competent as proof that a criminal confederation has in fact been formed." *Id.* The *Davalos* Court further provided that "[t]he presence of such circumstances may furnish a web of evidence linking an accused to an alleged conspiracy beyond a reasonable doubt when viewed in conjunction with each other and in the context in which they occurred." *Id.* (quoting *Commonwealth v. Swerdlow*, 636 A.2d 1173, 1177 (Pa. Super. 1994)). Thus, the *Davalos* Court determined that the jury "could have reasonably adduced that [the] [a]ppellant not only agreed to, but did, aid the shooter in the commission of his act" since he "drove the shooter to the bar … sped away with the shooter, changed cars and evaded the police for two hours before being arrested." *Id.* at 1194.

In this case, the trial court instructed the jury that the Commonwealth was attempting to prove a conspiracy by circumstantial evidence. N.T., 9/18/14, at 116-17. The trial court thereafter instructed the jury that it

must "look at all other factors" beyond Odem's mere presence at the scene and suggested that finding that Odem drove to the scene or "that he did other things" constituted more than mere presence to infer that Odem was part of a conspiracy with Rain. *Id.* at 117-18. We find no error in these instructions. Accordingly, Odem is not entitled to relief on his final issue.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/27/2015